Commonwealth *v.* DePofi, Appellant.

Argued January 3, 1949; reargued April 19, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON, STEARNE and JONES, JJ.

230

*John Dugan,* with him *Charles J. Maloney* and *Roy T. Clunk,* for appellant.

*Samuel Strauss,* Assistant District Attorney, with ﬁim *William S. Rahauser,* District Attorney, for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, May 26, 1949:

On the evening of March 5, 1948 the appellant and a companion burglarized the unoccupied home of Roy Klinzing in Bethel Township. Their presence was noticed and the police were called. Two officers entered the house, arrested appellant and his accomplice, and then ordered them to precede the officers out of the house. Right after they did so, one of the prisoners remarked, "Stay where you are. Don't anyone move." DiPofi covered the officers with a gun and then backed away and directed the officers to enter their car. The officers made a break and DiPofi fired at them, fatally wounding officer Chemelynski, who died four days later.

On the trial, before the defendant took the stand, the Commonwealth offered in evidence the criminal record of the defendant showing 16 or more prior convictions or pleas, all on indictments for burglary. The

offer was objected to. The objection was overruled and the evidence was admitted, accompanied by the following instruction by the judge: "These other records, 15 of them,[1] have been received in evidence for another reason altogether and I will stress that again in connection with my charge, but I want you to have it in mind at this point. You are not under any circumstances to treat these 15 cases as in any way indicating the guilt of this accused in this case. You are only to treat them as an aid to you, if so they be, if you find the defendant guilty of first degree murder, and then in consideration of the penalty that you will impose for that offense, if you so find. Please keep that definitely in mind." In his charge to the jury, the judge stated that the records "were received in evidence solely for the purpose of assisting you in determining the penalty to be inflicted upon the defendant, if you find him guilty of murder in the first degree and to enable you to know what manner of man he is. They are in no circumstances to be considered in weighing the question of the defendant's guilt or innocence, or the degree of the offense. You must not take account of them at all unless you first find that the defendant is guilty of first degree murder."

The jury returned a verdict of murder in the first degree and fixed death as the penalty. Sentence was imposed, a new trial was refused, this appeal followed.

The admission of the records of fifteen burglaries unrelated to the crime charged and the above instructions of the court in respect thereto are assigned as error.

---

[1] The first of the records was received in evidence on the basis that part of the personal property set forth in that burglary indictment was identified in the trial of this case by Lynn G. Riley as property belonging to him, and because the two weapons thus claimed were here identified as recovered at the Klinzing premises, one of them according to the testimony, having been used by this defendant in the shooting of the officers.

At common law, evidence of the commission of a distinct crime was not admissible in the absence of a connection between the two crimes. This is still the law in Pennsylvania. This Court said in *Commonwealth v. Williams,* 307 Pa. 134, 151 (1932), 160 A. 602: "there can be little doubt that the admission of a prior conviction trenches very strongly on the fundamental rule of evidence, that a distinct crime unconnected with that on trial cannot be given in evidence against a prisoner as proof of the crime on trial." But in the same case we considered the Act of May 14, 1925, P. L. 759, which gave a jury adjudging a defendant guilty of murder in the first degree the right to fix the penalty of death or life imprisonment, and we said: "That act introduced a new feature in the procedure of homicide trials . . . Does the Act of 1925 open a new field of evidence to the extent here claimed? . . . Obviously, the legislature, in directing the jury to fix the penalty and providing a new penalty, intended that the jury should have some guide in determining which punishment to inflict." We held that evidence as to prior convictions might be offered "in aggravation of the penalty", but that this evidence "must be strictly limited" to that purpose. "But in no case should a record of such criminal acts such as pickpocketry, adultery, embezzling, perjury, or others of a similar nature be used in aggravation of the penalty." We added: "Where the trial judge is convinced that such [previous] crime was committed for profit, such as the crimes of highway robbery, burglary, murder for life insurance, bank holdups, and the like, and that the criminals are habitual offenders against society, then prior convictions may properly be received by the jury as an aid in determining the penalty to be inflicted." In that same case we discussed the Act of March 15, 1911, P. L. 20, which reads as follows:

"An Act Regulating in criminal trials the cross-examination of a defendant, when testifying in his own behalf.

"Hereafter any person charged with any crime, and called as a witness in his own behalf, shall not be asked, and, if asked, shall not be required to answer, any question tending to show that he has committed, or been charged with, or been convicted of any offense other than the one wherewith he shall then be charged, or tending to show that he has been of bad character or reputation; unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character, or reputation; or,

"Two. He shall have testified at such trial against a co-defendant, charged with the same offense."

We said: "this act extends only to the cross-examination of the accused, as the title and the body of the act specifically applies to such examination. It is 'an act regulating in criminal trials the cross-examination of a defendant when testifying in his own behalf,' and does not relate to affirmative proof by the Commonwealth already admissible under the exceptions above listed." [2]

In *Commonwealth v. Parker*, 294 Pa. 144 (1928), 143 A. 904, this Court said in an opinion by Chief Justice MOSCHZISKER: "The Act of 1925 was not passed to help

---

[2] The exceptions listed are as follows: "Prior convictions can be admitted in evidence to show intent, scienter, motive, identity, plan, or the accused to be one of an organization banded together to commit crimes of the sort charged, or that such prior conviction or criminal act formed a part of a chain, or was one of a sequence of acts, or became part of the history of the event on trial, or was part of the natural development of the facts; also to prove the mental condition when the defense was insanity, or to rebut the inference of mistake, or to show a guilty knowledge." Citing cases.

habitual criminals, and we take judicial knowledge of the fact that offenders of that designation have become so general that the law, not only lex scripta but non scripta, must advance to protect society against them. This being so, in a case like the present, where the trial judge was convinced from the confessions of the defendants, as the court below evidently was, that they were habitual offenders against society,—robbers, burglars, and, as occasion arose, murderers,—where the evidence indicated such to be their general manner of life, and where the defendants asked that, if convicted, the jury, in assessing punishment, extend mercy to them, we cannot say it was reversible error to receive their full confessions in evidence, even though it is possible that the admissions therein of other offenses may have militated in a general way against defendants." We reiterated this in *Commonwealth v. Mellor*, 294 Pa. 339, 144 A. 534.

In *Commonwealth v. Dague*, 302 Pa. 13, 152 A. 839, this Court in an opinion by Justice SCHAFFER said, in discussing the Act of May 14, 1925, that the jury is entitled to know what manner of man the defendant is. In that case the court below had stated that it was "convinced, from the admissions of the defendant and the other evidence in the case, that the defendant is an habitual offender against society, a robber of the type that would commit murder, when necessary, to accomplish his purpose."

In *Commonwealth v. Kurutz*, 312 Pa. 343, 168 A. 28, the Court in an opinion by Justice KEPHART in discussing the Act of 1925: "In such cases the jury may have before it the past deeds of the accused that it may be fully advised of his nature and deserts when it fixes the penalty to be suffered by him."

Appellant contends that the rule enunciated in the above cases no longer prevails since the passage of the Act of July 3, 1947, P. L. 1239, "amending" the Act of 1911, supra. The Act of 1947 bears this title: " 'An act

regulating in criminal trials the cross-examination of a defendant, when testifying in his own behalf', by further providing what evidence is or is not admissible.'' There are two substantial differences between the Act of 1911 and the Act of 1947. The subject matter of the Act of 1911 is the *cross-examination* of a defendant when testifying in his own behalf. The subject matter of the Act of 1947 is *affirmative proof* by the Commonwealth at the. trial of *any person charged with crime* whether or not he is called as a witness in his own behalf. The third paragraph of the Act of 1947 is entirely new.[3]

Some commentators have assumed that subsection 3 of the Act of 1947 is "a new addition to the Act of 1911; it is, in substance, an exact reproduction of §1 f (i) of the English Criminal Evidence Act of 1898, the omission of which section from the Act of 1911 caused Dean Wigmore to term it a 'vicious piece of legislation', for he thought that by omitting §1 f (i), the Pennsylvania General Assembly intended to keep out evidence of all of those crimes having an independent relevancy." There is a vital difference between the Act of 1947 and the English Criminal Evidence Act of 1898. The English

---

[3] The Act of 1947 reads as follows: "Section 1. Be it enacted, &c., That . . . in the trial of any person charged with crime, *no evidence shall be admitted* which tends to show that the defendant has committed, or has been charged with, or has been convicted of any offense, other than the one wherewith he shall then be charged, or that he has been of bad character or reputation unless,—

"One. He shall have at such trial, personally or by his advocate, asked questions of the witness for the prosecution with a view to establish his own good reputation or character, or has given evidence tending to prove his own good character or reputation; or,

· "Two. He shall have testified at such trial against a co-defendant, charged with the same offense.

"Three. The proof that he has committed or has been convicted of such other offense is admissible evidence as to the guilt or the degree of the offense wherewith he is then charged."

Act applies *only* when a person who is charged with a crime *becomes a witness in his own behalf* and it relates solely to the questions that may be asked him on *cross-examination.* The Pennsylvania Act of 1947 applies *to* any person charged with *crime* whether he testifies in his own behalf or not, and defines what *affirmative* evidence may be used against him. While §1 f (i) of the English Criminal Evidence Act reads somewhat like the last sub-section of the Pennsylvania Act of 1947, a comparison of the corresponding sections shows a substantial difference between them.[4] The meaning of sub-section 3 of the Pennsylvania Act of 1947 is obscure and has already caused confusion in the administration of criminal law in Pennsylvania.

Appellant contends that the Pennsylvania Act of 1947 had no place in the trial of this case because he at the trial did not attempt to establish his own good character or reputation and did not testify against a co-defendant charged with the same offense and the proof that he committed other offenses had no relevancy as to his guilt of the crime charged. Judge McNAUGHER in overruling this contention held that the phrase "degree of the offense" in the Act of 1947 meant the heinousness of the offense and that therefore the jury was justified in considering evidence of these other crimes in order to ascertain what sort of a man the defendant was to the end that appropriate punishment might be

---

[4] Section 1 (f) and 1 (f) (i) of the English Act read as follows: "A person charged and called as a witness in pursuance of this act shall not be asked, and if asked shall not be required to answer, any question tending to show that he has committed or been convicted of or been charged with any offence other than that wherewith he is then charged, or is of bad character, unless—

"(i) the proof that he has committed or been convicted of such other offence is admissible evidence to show that he is guilty of the offence wherewith he is then charged; or . . ."

inflicted as between death and life imprisonment. As we have already pointed out, Judge McNAUGHER in admitting the record of the 15 unrelated burglaries instructed the jury that they were not to consider that evidence as in any way indicating the guilt of the accused but only in determining the proper penalty in the event the jury should find him guilty of murder in the first degree. In his charge to the jury he said as to these prior convictions: "They are in no circumstances to be considered in weighing the question of the defendant's guilt or innocence, or the degree of the offense."

In his opinion refusing a new trial Judge Mc-NAUGHER interpreted the third paragraph of the Act of 1947 as permitting "the introduction of the records of prior convictions . . . to show aggravation of the penalty for first degree murder." He said: "The language, 'degree of the offense' cannot and does not in the third exception (Act of 1947) refer to first or second degree murder." In other words, the trial judge after instructing the jury as to what constituted murder in the first degree and what constituted murder in the second degree, charged the jury in effect that subsection 3 of the Act of 1947 divided murder in the first degree into two degrees for the purpose of making a difference in the penalties to be imposed, the penalty of death or the penalty of life imprisonment, depending upon the record of the defendant in respect to being a previous offender against society.

The appellant's and Judge McNAUGHER's opposing interpretations of subsection 3 reveals how ambiguous and confusing this subsection is. Logic appears to be on the side of the appellant, who contends that evidence of other crimes cannot under subsection 3 of the Act of 1947 be admitted unless they are relevant to the guilt of the accused and since it is the established law that

evidence of unrelated crimes are not admissible to prove the guilt of an accused, the admission in this case of the evidence of the unrelated crimes was in error. But the trial judge said: "The word 'degree' as used in the Act of 1947 means a grade of punishment", depending upon the heinousness of the murder.

We find no justification for this interpretation either in any dictionary or in any authority or in any case. In none of the numerous opinions handed down by this Court discussing the Act of 1925 did it ever use the phrase "degree of the offense" in attempting to define the difference between those first degree murders which call for the death penalty and those which call for life imprisonment.

In all those cases the court emphasized that in fixing the penalty for first degree murder in a given case the jury was not to be influenced so much by the character of the *crime* as by the character of the *criminal* and that if his record showed that he was an habitual offender against society he would not be entitled to the comparatively merciful sentence of life imprisonment. We find nowhere in the opinions of this Court discussing the Act of 1925 any reference to the comparative heinousness of two distinct murders in the first degree. *Every* wilful and deliberate and premeditated murder is a *heinous* offense. It is with the exception of treason the highest offense known to the law, and it would be to introduce an absurd anomaly into the law to divide murder in the first degree into *first degree* first degree murder and *second degree* first degree murder. It is now sometimes difficult for juries to comprehend the difference between first degree murder and second degree murder. It would certainly add to their confusion if the court was obliged to tell the jury that after it decided the defendant guilty of murder in the first degree, it should then decide whether *that* "murder in

the first degree" was murder in the first degree *of the first degree,* or murder in the first degree. *of the second degree* for the purpose of fixing the appropriate penalty.

There is only one crime known to Pennsylvania law in which there is any "degrees". That crime is murder. The phrase "degree of offense" as applied to murder has a meaning which has been long established and never departed from since murder was by statute divided into murder in the first degree and murder in the second degree (a distinction which did not exist at common law).

The difficulty which the Act of 1947 raised for the trial judge is manifest both in his charge to the jury, and in his opinion refusing a new trial. His interpretation of "degree of the offense" as used in the Act of 1947 was manifestly strained and it was forced because of the fact that the phrase "degree of the offense" as applied to murder has for a long period of time had an established meaning and it has never before been used as having any reference to the comparative heinousness of *two* "degrees" of the crime of murder in the first degree, which the court below believed subsection 3 of the Act of 1947 had created.

In order that the Act of 1947 should not be used to *prevent* the introduction of evidence of the defendant's long criminal record (to the end that appropriate punishment could be imposed) the court was obliged to give to the phrase "degree of the offense" a *strained* construction, one that was a complete departure from the meaning long attached to a well-known technical phrase. Since murder is the *only* crime which in Pennsylvania is divided into degrees, the phrase "degree of the offense" as used in the Act of 1947 must mean the degree of the *murder* found to have been committed. To interpret the phrase the "degree of the offense" to mean the heinousness of the crime is without warrant in any statute or

in any decision of this court. It is also made in contravention of Section 33 of Article III of the Statutory Construction Act of May 28, 1937, P. L. 1019, 46 PS 533, which provides that "Words and phrases shall be construed according to rules of grammar and according to their common and approved usage; but technical words and phrases and such others as have acquired a peculiar and appropriate meaning or are defined in this act, shall be construed according to such peculiar and appropriate meaning or definition." In *Smrekar v. Jones & Laughlin Steel Corporation*, 137 Pa. Superior Ct. 183, 8 A. 2d 461, the Superior Court said that "words having precise and well settled meaning in the jurisprudence of a country have the same sense in its statutes unless different meaning is plainly intended".

If we construe subsection 3 of the Act of 1947 according to the above canon of construction, that Act would prohibit the introduction in the trial of a person accused of murder, of evidence of any other crime for the purpose of fixing the appropriate penalty. So interpreted the Act of May 14, 1925, P. L. 759, as interpreted and applied by this Court in *Commonwealth v. Williams* and in *Commonwealth v. Parker* and in *Commonwealth v. Dague*, supra, is of negligible value, for any jury in fixing the penalty for first degree murder would not be permitted to know anything about the defendant's criminal record. The fixing of the penalty would therefore be largely an arbitrary matter instead of being based as it should be upon a determination of the question of whether or not the defendant was a first offender or had a long record of crime.[5]

---

[5] Justice HOLMES said: "If the typical criminal is a degenerate, bound to swindle or to murder by as deep seated an organic necessity as that which makes the rattlesnake bite, it is idle to talk of deterring him by the classical method of imprisonment. He must be got rid of; he cannot be improved, or frightened out of his structural reaction. . . . There is weighty authority for the belief that . . .

That subsection 3 of the Act of 1947 is ambiguous and a prolific source of trouble in the administration of criminal justice is obvious. The able trial judge in the instant case apparently found the Act troublesome. In the first degree murder case of *Commonwealth v. Darcy*, this day decided by us, 362 Pa. 259, 66 A. 2d 663, the trial judge characterized the Act (of 1947) as "vague, indefinite, and uncertain" and he said that "the most that can be expected of decisions based on it would be a mere guess as to the legislative intent in the adoption of this peculiar amendment". His "guess" as to this subsection 3 of the Act was that it meant that "the prosecution may still introduce proof of other crimes having an independent relevancy for the purpose of proving that the defendant is guilty of the crime with which he is charged". He also said: "If, as was strongly urged by the defendant's counsel at the argument, the legislature, in passing the Act of 1947, clearly intended to bar all affirmative proof by the commonwealth of independent crimes or convictions, other than the crime for which the defendant is on trial, then the Act of 1925, as re-enacted, supra, becomes ineffectual and, since we have no statute in Pennsylvania permitting piece-meal verdicts, our juries would be deprived of the evidence, so necessary, to properly fulfill their function of assessing the penalty."

In *Commonwealth v. Robinson*, 163 Pa. Superior Ct. 16, the Superior Court, speaking through Judge ARNOLD, said: "Dean Wigmore said of it [the Act of 1911, P. L. 20] that Pennsylvania 'has now permitted . . . vicious legislation to slip in and thus tenderly to make it easier

---

'not the nature of the crime, but the dangerousness of the criminal, constitutes the only reasonable legal criterion to guide the inevitable social reaction against the criminal'." (Citing Havelock Ellis, "The Criminal") The Path of the Law, 10 Harvard Law Review 457, at 470.

In a large percentage of cases convicts sentenced to "life imprisonment" are paroled after serving about a dozen years.

for astute defenders to juggle their clients out of legal danger.' The amendment of 1947 is subject to even greater criticism." [6]

But the above do not constitute all of the ambiguous and confusing features of the Act of 1947. Subsections 1 and 2 of the Act are connected by the conjunction "or" while subsections 2 and 3 are *not* so connected. Subsection 1 and subsection 2 are obviously related, because just before the word "or" at the end of subsection 1, there is a semicolon, while at the end of subsection 2 there is a period. Since in the English Act, which the Act of 1947 resembles in its phraseology, the three sections are all connected by the conjunction "or", the question arises whether or not subsection 3 is to be read as a categorical imperative or whether it is to be read as subject to the restrictive conjunction "unless"

---

[6] Law commentators have also passed adverse judgment on the Act of 1947. In the University of Pennsylvania Law Review for June 1948, Volume 96, pages 853 to 863, inclusive, there is an article on the Acts of 1911 and 1947. On page 862 the writer says: "It is believed that the 1947 amendment will add little but a period of confusion and uncertainty in the law regarding evidence of defendant's character in criminal cases." In an article on the Acts of 1911 and 1947 in the Temple Law Quarterly for October 48, Volume 22, No. 2, the author says: "The pre-1911 Judge made law on this subject was far superior to the Act of 1911 plus its amendment. The immediate repeal of this entire statute is highly recommended." In an article in the Erie County Legal Journal for December 26, 1947, Volume 30, No. 47, as to the Acts of 1911 and 1947 there appears this statement: "The final proviso of the 1947 amendment which reads, 'The proof that he has committed or has been convicted of such other offense is admissible evidence as to the guilt or degree of the offense wherewith he is then charged' is of more doubtful meaning. It may be limited to murder cases where evidence of prior crimes could aid the jury in granting either, death or life in prison as the penalty for first degree murder or it may become an extensive exception to the Act of 1911. Time and many cases will tell. In any event, if Professor Wigmore considered the Act of 1911 per se 'a vicious piece of legislation' I cannot but wonder what he would have thought of the 1947 amendment."

which appears at the end of section 1. It may be argued that the conjunction "or" was *inadvertently* omitted after subsection 2, but it can just as plausibly be argued that the word "three" was inadvertently placed before subsection 3. If the last subsection is to be read as a categorical imperative it makes proof of the commission of other offenses admissible evidence of a defendant's guilt of the crime charged against him. Under such interpretation subsection 3 would violate defendant's right to due process of law.

In *Miller v. Belmont P. & Rubber Co.*, 268 Pa. 51, 63, 110 A. 802, this Court said in an opinion by Justice MOSCHZISKER: "Where a statute is 'so vague, indefinite and uncertain that the courts are unable to determine, with any reasonable degree of certainty, what the legislature intended, or is so incomplete or conflicting and inconsistent in its provisions that it cannot be executed, it will be declared inoperative' . . ." This Court in an opinion by Mr. Justice HORACE STERN reiterated that in the case of *Willcox v. Penn Mutual Life Insurance Co.*, 357 Pa. 581. Because of the indefiniteness and uncertainty of the Act of 1947 we declare it inoperative.

The Act of 1947 is unconstitutional for another reason: Article III, Section 3, of the Pennsylvania Constitution provides: "No bill, except general appropriation bills, shall be passed containing more than one subject, which shall be clearly expressed in its title."

The Act of 1947 purports to be an amendment to the Act of 1911 which latter act relates only to the cross-examination of a defendant in criminal cases. Since the Act of 1947 applies to *all defendants in criminal cases*, it is in effect a *new* act which should be entitled: "An act prohibiting the admission in criminal trials of a defendant's criminal record except under certain contingencies."

An attorney engaged to defend a person accused of crime and who did not plan to call his client to the wit-

ness stand would, if he read the title to the Act of 1947 which purports to be only an amendment to the Act of 1911, conclude that he had no occasion to examine the body of the Act of 1947.[7] If we add to the title of the Act of 1911 the amending part of the title to the Act of 1947, we have a complete title reading as follows: "An act regulating in criminal trials the cross-examination of a defendant when testifying in his own behalf, by further providing what evidence is or is not admissible." This title to the Act of 1947 is clearly of a hybrid nature —the first part referring *exclusively* to the cross-examination of a defendant and the new portion referring to the "admission of evidence". Since evidence is never "admitted" on cross-examination, the amending portion of the title is not germane to the title it purports to amend. Neither is the 1947 "amendment" to the Act of 1911 germane to the Act of 1911. An act relating to the *admission of evidence* in criminal trials is no more germane to an act relating to the *cross-examination* of a defendant than would a text-book on the *admissibility* of evidence be germane to the title, "The Limits of Cross-Examination of Defendants in Criminal Cases". If an act had been passed in 1911 regulating the use of explosives in the *demolition* of buildings an act passed in 1947 prescribing what material could or could not be used in the *construction* of buildings would certainly not be germane to the earlier act. The "admission" of evidence refers to the admission of affirmative evidence in chief and not to what may be asked of a defendant on cross-examination. An amendment to any Act must be germane to the subject matter of the amended Act. The subject matter of the "amending" Act of 1947 is

---

[7] The title of a bill must disclose fully and clearly its subject to all interested parties: *Provident Life & Trust Co. v. Hammond*, 230 Pa. 407, 79 A. 628.

not germane to the subject matter of the Act of 1911, which it purports to amend.

In *Dorsey's Appeal*, 72 Pa. 192 (1872), the title of an act was "An Act relating to the liens of mechanics, material-men and laborers upon leasehold estates, &c.;" one section extended to the liens to freeholds. The Act was held unconstitutional. In that case Justice AGNEW said: "the title should be so certain as not to mislead. . . . To be 'clearly expressed' certainly does not mean something which is dubious, and therefore is not clearly expressed. If then the title seems to mean one thing while the enactment as clearly refers to another, it cannot be said to be clearly expressed."

*In re Road in the Borough of Phoenixville*, 109 Pa. 44 (1885), this Court said: ". . . the title must not only embrace the subject of proposed legislation, but also express the same so clearly and fully as to give notice of the legislative purpose to those who may be specially interested therein. Unless it does this it is useless."

In *Philadelphia to use of Nestor v. Spring Garden Farmers' Market Co.*, 161 Pa. 522, this Court passed upon the constitutionality of "A supplement to an act, entitled 'An act to incorporate the Union Passenger Railway Company,' approved April 8, 1864, authorizing said company to extend their track," and providing also that the company "shall not be chargeable with the cost or obliged to pay the cost of paving any street which has never been previously paved." This Court in an opinion by Justice MITCHELL held that the title of the supplementary Act violated the constitutional requirement that each act shall contain but one subject, which shall be clearly expressed in the title. In his opinion Justice. MITCHELL said: "It is true that under this clause of the constitution the rule is well settled that the title need not be an index to the contents of the bill, and that, in general, entitling an act a supplement to another will be sufficient to cover any subject that is

reasonably germane to the purpose and scope of the latter. But all our cases are clear and emphatic that the title, whether full or meagre, must not be misleading." Likewise in the instant case, when the Act of 1947 purported to amend the Act of 1911 which related solely to the cross-examination of a defendant, it "limited the notices to that particular feature" of the Act of 1911 and for that reason it was not only defective, but misleading, and should be stricken down as unconstitutional. See also *Beckert et al. v. City of Allegheny et al.*, 85 Pa. 191 (1877).

In *Commonwealth v. Kebort*, 212 Pa. 289 (1905), 61 A. 895, this Court held that the Act of June 26, 1895, P. L. 317, entitled "An act to provide against the adulteration of food, and providing for the enforcement thereof," was unconstitutional in so far as it related to drink. In the body of the law was a clause defining "food" to include all articles used for drink. It was here said that the usual meaning of food does not include drink, and that if the word was so used in the title there should have been some plain indication of the sense in which the term was employed. The purpose of the constitutional provision was to require that the title should inform legislators and others of the contents of the law, therefore the words used in the title must be understood in their common signification, and if any other meaning is to be given them by a definition adopted by the Legislature, there must be some indication of this in the title.

The title of the Act of 1947 is defective for still another reason. If we adhere to the canons of judicial construction the Act of 1947 must be interpreted as prohibiting the introduction of evidence of other crimes for the purpose of fixing the penalty to be imposed in cases of first degree murder. Section 3 of that Act bars evidence of the commission of other crimes except when that evidence is independently relevant to prove defend-

ant's guilt of the crime charged or "the degree of the offense", i. e. the degree of murder. Under this interpretation, the law established by this Court in interpreting the Act of 1925, supra, giving juries the right to fix the penalty in first degree murder cases, is superseded and evidence of such unrelated crimes for the purpose of fixing the punishment is prohibited. Surely an act which makes such a radical departure from law established for nearly a quarter of a century should *by its title* give notice of its purpose to make such a departure. There is nothing in the title which indicates any such purpose.[8]

Because the Act of 1947 is vague, indefinite and uncertain and because its title is defective we adjudge it to be unconstitutional and void.

In the case now before us the trial judge admitted the evidence as to the commission of other unrelated crimes by the defendant exactly the same as he would have done if there had been no Act of 1947. He admitted it for the purpose of enabling the jury to determine the appropriate penalty to be imposed upon the defendant in the event that he was convicted of murder in the first degree. Since the Act of 1947 was unconstitutional and therefore inoperative the trial judge was within his rights in admitting this evidence of other crimes committed by the defendant for the purpose specified.

---

[8] As Judge KELLER in the trial court said in *Commonwealth v. Darcy*, supra, this day decided by this Court: "The title of the Act of 1947 as we read it, admits of only one construction, that its application is restricted to cross-examination of a defendant when he testifies in his own behalf and if it is to have any effect whatever on the statute books it must be so construed. If it was intended that it be given a wider construction so as to exclude all evidence of prior offenses and convictions or admissions of unrelated criminal acts, regardless as to whether by affirmative testimony or by cross-examination, then, in that event, we would be inclined to hold the act to be unconstitutional."

A few weeks after the argument on the appeal the defendant filed an additional assignment of error in which he contended that the trial judge committed error in saying to the jury: "The Commonwealth particularly asks you in this case to convict the defendant of murder in the first degree because it asserts that the facts show that, as provided by the statute, murder was perpetrated in the commission of the crime of burglary. As to burglary, it is provided by statute that 'Whoever at any time wilfully and maliciously enters any building with intent to commit any felony therein is guilty of burglary.' . . . As burglary is a crime that might readily lead to the taking of human life, the law provides that a murder committed in the perpetration of or in the attempt to perpetrate it shall be deemed of the first degree."

The defendant himself admitted the fact that at the time he was apprehended by the officer later slain he was actually committing what is common law burglary.[9] Therefore, no prejudicial error can be predicated on the excerpt complained of.

The other assignments of error do not require discussion. They are overruled.

The judgment is affirmed and the record is remitted to the court below so that the sentence imposed may be executed.

---

[9] Defendant testified: "I believe I broke the window on the front door, your Honor, and I couldn't reach down to the lock. So, my brother-in-law, Mr. Wilson then broke the window on the door— I mean on the front of the house, the window that's in the front of the house and he opened up the latch and climbed in and opened the door and then we all entered the house and went in the house. So, while we were in the house, Jack and I, we had searched the house, looked for money and jewelry, as Mr. Clunk has told you, and as we were just getting ready to leave when in walked Officer Kercher and Officer Chmelynski."

DISSENTING OPINION BY MR. JUSTICE JONES:

I have no difficulty whatsoever in concluding that the Act of July 3, 1947, P. L. 1239, amending the Act of March 15, 1911, P. L. 20, is both valid and enforceable.

Consequently, it is my opinion that the learned trial judge committed reversible error when he admitted in evidence proof of prior convictions of the defendant. Nor did his caution to the jury, not to consider such evidence except in connection with the question of penalty, *if, and only if,* they should first find the defendant guilty of murder in the first degree, absolve the error. Indeed, I am frank to confess my inability to understand how there can possibly be the slightest question as to the meaning and intent of the Act of 1947, supra, especially in the light of its background and legislative history which Section 51(7) of the Statutory Construction Act (46 PS §551) bids us take into account if there be any inexplicitness in a law. Nor do I see how the title of the amendatory Act of 1947, supra, can be thought to offend against Article III, Section 3, of the Pennsylvania Constitution, particularly in view of the virile presumption in favor of the constitutionality of legislative enactments. Our duty is to sustain the Act as constitutional, if at all possible, and then to apply it faithfully according to its meaning and intent. What effect the statute has upon the trial of criminal cases is a matter which, presumably, the legislature fully pondered.

Under the Act of 1911, as originally enacted, a defendant in any criminal trial could not be asked in cross-examination, or required to answer, any question tending to show that he had committed, been charged with or convicted of any unrelated or unassociated offenses, or tending to show that he was of bad character unless either (1) he had sought to establish his good reputation or (2) had testified against a co-defendant charged with the same offense. As is well known, the Act of

1911, supra, was copied after the English Criminal Evidence Act of 1898, 61 and 62 Vict., c. 36. The Act of 1911 omitted, however, a third exception specified in the English Act whereby evidence of prior offenses is admissible if it goes to show the defendant guilty of the offense for which he is currently on trial.

With the advent of the Act of May 14, 1925, P. L. 759, which conferred upon juries the power to fix the penalty for a conviction of first degree murder as between life imprisonment and death, this Court restricted the scope of the Act of 1911 by allowing the Commonwealth, in its case in chief in homicide trials, to show prior crimes of the defendant as an aid to the jury in fixing the penalty in the event of a verdict of guilty of first degree murder: *Commonwealth v. Parker*, 294 Pa. 144, 151, 143 A. 904 (1928). A little later the Act of 1911 was directly nullified judicially in a case where the district attorney, on the trial of an indictment for murder, cross-examined the defendant in a manner designed to bring out his conviction of prior crimes. Even though neither of the exceptions under the Act of 1911, necessary to make such evidence admissible, were present, this Court found no error in the district attorney's cross-examination and upheld the defendant's conviction of first degree murder with penalty of death: see *Commonwealth v. Flood*, 302 Pa. 190, 194-195, 153 A. 152 (1930). The opinion for this Court in the *Flood* case justified the ruling on the ground that the Act of 1925 had "modified" the Act of 1911 "as it relates to a phase of homicide trials." The anomaly of the situation is apparent when it is recognized that the Act of 1911 was not so "modified" with respect to trials for all other crimes.

Thus, despite the positive inhibition of the Act of 1911 and solely by virtue of court decision, evidence of prior unrelated or unassociated offenses became admissible *either* in the Commonwealth's case in chief or in

cross-examination of the defendant. Thereafter and until the Act of 1947, supra, we had a situation in this State with respect to prior offense evidence, so made admissible against a defendant in a homicide case, that amounted to little less than a fanciful illusion. A jury was supposed to keep separate in its "adjudicating" mind the evidence it heard as to the defendant's guilt and, in its "penalty-fixing" mind, the evidence as to the defendant's prior unrelated criminal offenses. The thing could, and no doubt has, actually worked out in practice in a truly shocking way. It is not beyond the range of possibility that where, upon a trial for murder, the defendant's guilt is doubtful under the evidence, the balance may be tilted in favor of a conviction because of the subconscious effect of the impression made on the minds of the jury by the evidence of the defendant's prior criminal record. If anyone should think the possibility overdrawn, see observation by a Pennsylvania assistant district attorney in his complaint against the Act of 1947, supra, in 22 Temple Law Quarterly 220 (October 1948), where he says in the first paragraph that,— "Following the passage of the 1947 amendment to the Act of 1911 I have seen habitual criminals set free only because the jurors had no knowledge of the defendants' criminal records." In *Commonwealth v. Williams*, 307 Pa. 134, 151, 160 A. 602, this Court observed the solemn fact that while the Act of 1925 is silent on the subject of admissibility of prior unrelated crimes, ". . . the fundamental objection to the introduction of such evidence is that the jury may be prejudiced by a familiarity with these prior convictions when considering the question of guilt or innocence."

But, such was the situation that was created by the practice under the Act of 1925, as permitted by the decisions in the *Parker* and *Flood* cases, supra, and which the Act of 1947 was designedly passed to correct. Thenceforth, evidence of a defendant's prior offenses was not

to be brought out *either* in cross-examination of the defendant or as a part of the Commonwealth's case in chief, except in the situations specified by the Act of 1911 to which the Act of 1947 added a third exception where such evidence is also admissible. The proscription ordained by the Act of 1911 related alone to evidence adduced in the cross-examination of a defendant, and very naturally so. Up until then, and for some time following, evidence of prior unrelated offenses was not thought of as being admissible on a trial for a subsequent offense except where there was evidentiary relation between the prior and subsequent offenses tending to show the defendant's guilt of the offense for which he was on trial: see *Commonwealth v. Weiss*, 284 Pa. 105, 109-110, 130 A. 403, and cases there cited. The practice of receiving evidence of prior convictions in the Commonwealth's case on the question of penalty was, of course, new with the decision in the *Parker* case, supra, in 1928. Quite properly, therefore, when the question of revitalizing the Act of 1911 with respect to its prohibition of evidence of prior convictions upon cross-examination of the defendant (which the *Flood* case had allowed) came up for consideration, it was but logical to have the amendatory Act also abrogate the practice fathered by the *Parker* case.

And so, the Act of 1947 was made to provide that "in the trial of any person charged with crime, *no* evidence [of prior convictions, etc.] shall be admitted . . . unless,— . . ." (Emphasis supplied). Then follow, in the Act of 1947, the two exceptions specified by the Act of 1911, where such evidence is admissible (see supra), to which provisions the amendment of 1947 added, to like end, a third exception which is substantially the exception in the English Criminal Evidence Act of 1898 which was originally omitted from the Act of 1911 as already mentioned. The new third exception in the Act of 1947 reads as follows: "The proof that he has com-

mitted or has been convicted of such other offense is admissible evidence as to the guilt or the degree of the offense wherewith he was then charged."

The learned trial judge thought the above-quoted provision "vague, indefinite and uncertain." With that, the majority opinion apparently agrees and further asserts that ". . . subsection 3 of the Act of 1947 is ambiguous and a prolific source of trouble in the administration of criminal justice." In my opinion, the provision is neither ambiguous nor troublesome. The fact of the matter is that, save for the three words "or the degree" contained in the third exception of the Act of 1947, the provision is identical with the first exception of the English Criminal Evidence Act of 1898. Indeed, when the bill was introduced in the legislature, the third exception of the proposed Act of 1947 *was exactly the same* as the first exception of the English Act. But, during the course of the Act's passage, the third exception was amended by the addition of the words "or the degree"; and, as so amended, the Act was finally passed and signed by the Governor. The reason for the amendment requires neither refined reasoning nor speculation for the discovery of the obvious answer. Unlike the English, we have *two* degrees of murder, and, inasmuch as first degree murder may depend upon proof of the defendant's perpetration or attempt to perpetrate a particular independent offense, the amendment was to make certain that the Commonwealth would not be prevented in any instance, because of the inhibitions of the Act, from showing the independent offense essential to making the homicide, charged, murder of the first degree. It should not be overlooked that the only place where the breakdown of the historically just provisions of the Act of 1911 has taken place has been exclusively in the field of homicide trials. What was more natural, then, than that any proof necessary to find a murder to be of the first degree should not be rendered inadmissible

by virtue of any of the provisions of the Act of 1947? The words "or the degree" may not have been necessary to assure the desired eventuality, but they certainly do not detract from the Act or make it indefinite or uncertain.

Even should the third exception of the Act of 1947 be so unintelligible as to be unworkable (which, of course, it is not), the invalidity would attach only to the third exception. How could it possibly affect the balance of the Act which, elsewhere, makes inadmissible *in the Commonwealth's case* evidence of a defendant's prior offenses? The Act of 1911, with its two exceptions, stood on the books for years and was never assailed as unworkable; those two exceptions still remain in the Act of 1947; and the amended body is plain enough.

The obvious purpose of the Act of 1947 was to make inadmissible in trials for murder *any* evidence *either in the Commonwealth's case* or by cross-examination of a defendant concerning unrelated offenses except where such evidence is expressly allowed by one or more of the three exceptions specified by the statute. The Act had been deliberately introduced as a necessary complement of the anticipated operation of Section 701 of Senate Bill 306 of the same (1947) session, known as the "Crimes Act", which provided for "piecemeal" verdicts in murder cases. Unfortunately, the "Crimes Act" ultimately failed of passage. But, manifestly, that circumstance cannot reasonably be asserted as having had the slightest legal effect or influence on the validity of the complementary measure which did pass and became the Act of 1947, supra.

The question raised *by the district attorney* as to the constitutionality of the Act of 1947, supra, lacks merit. Incidentally, it is most unusual, to say the least, for a governmental law officer to question the constitutionality of an enactment of his own sovereign's legislative assembly.

The title to the 1947 amendment does not offend against Article III, Section 3, of the Pennsylvania Constitution. Indeed, it is even more explicitly expressed than it would have needed to be in order to satisfy the constitutional requirement, the 1947 enactment being, as it is, *an amendment* and not an original Act. See *Page v. The Williamsport Suspender Company*, 191 Pa. 511, 518, 43 A. 345, where this Court said that the title to a supplementary Act of 1897 ". . . would have been good if it had ended with calling it a supplement to the act of 1869." With specific reference to the requirement of Article III, Section 3, of the Constitution, "the distinction between the title to an original act and that of a supplement . . ." has been noted: *Provident Life & Trust Company v. Hammond*, 230 Pa. 407, 412, 79 A. 628; *Philadelphia v. Ridge Ave. Ry. Co.*, 142 Pa. 484, 491, 21 A. 982. And, of course, so far as the constitutional requirement is concerned, an amendment to an Act stands in no different relation to the original Act than does a supplement as to germaneness.

In the case of an amendment or supplemental Act, the test as to the sufficiency of the attempted compliance with the title requirement of the Constitution is the *germaneness* of the amendment or supplement. If the amendatory Act be germane to the Act to be amended, the title of the amending Act need contain no more than that it is an Act amending a certain portion of an Act of a designated date whose title it recites and then makes reference in general terms to the character of the amending extension. In *Philadelphia v. Ridge Ave. Ry. Co.*, supra, this Court said (p. 491) : "When an act of assembly is a supplement to a former act, if the subject of the original act is sufficiently expressed in its title, and the provisions of the supplement are *germane* to the subject of the original, the general rule is that the subject of the supplement is covered by a title which contains a specific reference to the original by its title,

giving the date of its approval, and declaring it to be a supplement thereto" (Emphasis supplied). See also *Blanchard v. McDonnell*, 286 Pa. 283, 287, 133 A. 505; *Goodwin v. City Council of Bradford*, 248 Pa. 453, 457, 94 A. 139; *Allentown v. Wagner*, 214 Pa. 210, 212, 63 A. 697.

The subject-matter of the amendment of 1947 was peculiarly germane to the Act of 1911. The original Act dealt with the *inadmissibility* in *criminal trials* of *evidence designed to stultify the defendant* on the basis of past offenses. The restriction of the Act of 1911 was, naturally, laid against evidence sought to be elicited in the cross-examination of the defendant. For, at that time, cross-examination of a defendant was the only way offering any opportunity to a prosecutor to introduce evidence of such character. The amendment of 1947 relates to precisely the same subject-matter, viz., the *inadmissibility* in *criminal trials* of *evidence designed to stultify the defendant* on the basis of past offenses. The restriction of the Act of 1947, however, was quite appropriately not limited merely to evidence sought to be elicited from the defendant on cross-examination, for, since the enactment of the Act of 1911, and by virtue of this Court's decision in the *Parker* case, supra, it had become the common practice for a district attorney to introduce in the Commonwealth's case in chief evidence of the defendant's unrelated offenses.

The title to the Act of 1947 reads as follows: "An Act To amend section one of the act, approved the fifteenth day of March, one thousand nine hundred eleven (Pamphlet Laws 20), entitled 'An act regulating in criminal trials the cross-examination of a defendant, when testifying in his own behalf,' by further providing what evidence is or is not admissible."

Thus, the title correctly states the very section of the original Act it was intended to amend; it accurately identifies the original Act by its date of passage and

even its pamphlet law page number; it recites the title of the amended Act in full; and it then specifies that it amends the original Act "by further providing what evidence is or is not admissible." What this Court said in *Gilbert's Estate*, 227 Pa. 648, 650, 76 A. 428, is especially apposite in this particular connection,—"This act [an amendment of 1909] amends sec. 1 of the act of 1833 and the title of the later act recites totidem verbis the title of the amended act and indicates *in general language* the subject and nature of the amendment. This would seem to be a strict compliance with every requirement and there is no decided case in which there is even a suggestion that anything more is necessary to make a valid title to an act" (Emphasis supplied). The majority, I submit, misconceive the subject of the Act of 1911 to be the cross-examination of a defendant in a criminal trial when called to testify in his own behalf. In reality, the subject of the Act of 1911 is the inadmissibility of certain evidence in a criminal trial concerning the defendant. It is an *evidence* statute and so is the amendment of 1947 which relates exclusively to the inadmissibility of certain evidence in a criminal trial respecting the defendant. Under the majority view, it would never be possible to amend the Act of 1911 except in relation to the cross-examination of a defendant in a criminal trial when called to testify in his own behalf. My research has failed to disclose a single case in this State where the title of an original Act has ever been so narrowly restricted in its bearing upon a subsequent cognate amendment.

The majority opinion also mistakes, as I further submit, the test to be applied in determining whether the title of the 1947 Act is sufficient. The error is apparent where the majority opinion gives as an illustration of the specification required of a title the following: "An attorney engaged to defend a person accused of crime and who did not plan to call his client to the

witness stand would, if he read the title to the Act of 1947 which purports to be only an amendment to the Act of 1911, conclude that he had no occasion to examine the body of the Act of 1947." The title to an Act is not required to be an index or synopsis of its contents: *Commonwealth v. American Gas Company,* 352 Pa. 113, 118-119, 42 A. 2d 161; *Poor District Case (No. 1),* 329 Pa. 390, 399-402, 197 A. 334. "It has been decided over and over again", as was said in *Gilbert's Estate,* supra, at p. 650, "that the title need not be a general index to the contents of an act . . ."

The purpose of the constitutional requirement was that the title should give notice of the subject dealt with (in this instance, the admissibility and inadmissibility of certain evidence relating to the defendant in a criminal trial) so that a reasonably inquiring state of mind would lead one to examine the body of the Act: *Kelley v. Earle,* 325 Pa. 337, 353-354, 190 A. 140, where it was said that,—"We have had this Article and Section [Art. III, Sec. 3] before us so often that it is scarcely necessary to discuss the subject at length: [citing cases].". The title is not supposed to be a compendium of information for the use of practicing attorneys after a bill has become law. The notice intended is for the benefit of legislators and all other interested persons during the passage of an Act so as "to prevent 'log-rolling' and fraud, trickery, or surprise in legislation": Buckalew on the Constitution, p. 68. For an interesting discussion of the true purpose of the particular constitutional provision see opinion of Chief Justice KEPHART in *Commonwealth v. Stofchek,* 322 Pa. 513, 517, 185 A. 840.

In *Provident Life & Trust Company v. Hammond,* supra, cited also by the majority opinion in support of its illustration above-quoted, the title of the Act there under consideration was defective because the date of approval of the original Act, as recited by the title of the amending Act, was incorrect. There was no such

Act of such date and, of course, the title was fatally defective.

It is not disputed in the instant case that the fifteen separate indictments received in evidence against the defendant over his objection all covered unrelated crimes,—unconnected with the crime for which the defendant was on trial. They were, therefore, not admissible in evidence under any of the three exceptions specified in the Act of 1911 as now amended by the Act of 1947. As a consequence, their reception in evidence constituted fatal error and I would, therefore, reverse the judgment and remand the case for a new trial.