## Commonwealth v. Klier

**156**

*Samuel R. DiFrancesco*, District Attorney, *Davis C. Wolf*, Assistant District Attorney, and *Arnold D. Smorto*, Assistant District Attorney, for the Commonwealth.

*Maurice Shadden* and *John M. Bennett*, for defendant.

BRAHAM, P. J. (fifty-third judicial district, specially presiding), September 12, 1951.—Defendant, H. S. Klier, otherwise known as Henry S. Klier, was tried on two indictments, the trials being consolidated. On the first indictment at December sessions, 1950, no. 7, in the court of oyer and terminer he was found not guilty of statutory rape. On the second at December sessions, 1950, no. 31, in the court of quarter sessions he was found guilty on the first count, which charged assault and battery with intent to ravish, but not guilty on the second count, which charged indecent assault. The several judges of Cambria County being disqualified and the right to have additional judges to sit with the court en banc being waived, the argument on defendant's motion for a new trial was heard by the trial judge alone.

The offense was alleged to have been committed on the person of Dolores Arnold, a minor, who was 13 years of age at the time. On May 27, 1949, she had been placed in the home of defendant with a view to adoption; the offense happened on June 20, 1949.

The principal error assigned in support of the motion for a new trial is the admission in evidence against

defendant of his prior pleas of guilty and prior sentences for five sex crimes against young girls which occurred late in 1937 or early in 1938 in Greene County, Pa., when defendant was the girls' teacher.

The prior offenses were statutory rape and sodomy. Two sentences of 7½ to 15 years were imposed to run consecutively; the other sentences were concurrent. He was released on parole after about five years in the penitentiary and came to Cambria County where he held a responsible position in an industry.

Defendant was at the time of the offenses in Cambria County under the supervision of Orange Dickey, a probation officer of the State Parole Board. There was some division of authority and consequent confusion among the officials of the State Parole Board, the officials of the Juvenile Court of Cambria County and the officials of the Child Welfare Bureau of Cambria County with respect to the custody of the young girl upon whom the assault is alleged to have been committed and in particular with respect to her placement in the home of defendant.

The evidence of defendant's prior conviction was offered by the Commonwealth as a part of its case in chief to show defendant's "inclination, design, predeliction or disposition" toward crimes of this description. Reliance was had upon the decision in Commonwealth v. Kline, 361 Pa. 434. In the Kline case defendant was charged with statutory rape on his daughter and the Commonwealth was allowed to show in rebuttal that defendant during the same month had exhibited himself in a nude condition and a lascivious manner to a neighbor woman, a circumstance which defendant as a witness had denied.

Defendant objected that the prior convictions were too remote and hence the evidence thereof was incompetent. To bridge the span of 11 years the Commonwealth offered to show that defendant, being under

parole for the offenses in Greene County, deceived and disobeyed the directions of the parole officers in order to get the girl, Dolores Arnold, into his home. On the basis of this offer the evidence of defendant's prior convictions was received.

The outlines of the law on the point must be kept in mind. In general under our system it is not competent to show that a man committed a crime by showing that he previously committed similar but unrelated crimes: Commonwealth v. Williams, 307 Pa. 134, 147-48; Commonwealth v. DePofi, 362 Pa. 229, 232.

Two statutes altered the common-law rule: the Act of March 15, 1911, P. L. 20, 19 PS §711 and the Act of May 14, 1925, P. L. 759. The Act of 1911 first forbade, except in certain circumstances, the asking of a defendant on trial for crime whether he had previously committed, been charged with or been convicted of an offense other than the one for which he is on trial or the asking of any question tending to show that he has been of bad character or reputation. The Act of 1925 first allowed the jury to fix the penalty of one found guilty of murder in the first degree.

Under these statutes two practices grew up sanctioning the use of prior records against a defendant in a criminal case. First, notwithstanding the Act of 1911, evidence of a prior conviction of felony or of a misdemeanor, crimen falsi, has been held admissible as bearing on the credibility of a defendant who takes the stand in his own behalf: John Doe, alias Cedar Ross, 79 Pa. Superior Ct. 162; Commonwealth v. Gibbs, 167 Pa. Superior Ct. 79, 86. Second, under the Act of 1925, and again notwithstanding the Act of 1911, it has been held proper to admit in a murder case evidence of prior conviction of defendant in order to assist the jury to fix the penalty: Commonwealth v. Niemi, 365 Pa. 105. These two results still obtain notwithstanding an attempted amendment of the Act of March 15,

1911, by the Act of July 3, 1947, P. L. 1239, which was declared unconstitutional in Commonwealth v. DePofi, 362 Pa. 229.

Certain exceptions to the common-law rule excluding evidence of prior convictions have also grown up independent of statute. One of these, the rule allowing evidence of a different crime but one related to the action, is well settled but requires no comment here: Commonwealth v. Wentzel, 360 Pa. 137, 150; Commonwealth v. Schroeder, 302 Pa. 1. More in point is the exception allowing other offenses to be shown to prove identity, intent, design, guilty knowledge, the absence of mistake and the like: Commonwealth v. Strantz, 328 Pa. 33; Commonwealth v. Fugmann, 330 Pa. 4; Goersen v. Commonwealth, 99 Pa. 388.

In the case at bar the evidence of prior offenses was offered to show defendant's disposition or predeliction to commit sexual offenses against young girls. A growing awareness on the part of courts and public alike that there is a pattern of misconduct involved in sex offenses with children and other forms of sexual perversion which may tend to repeat itself has gained a more favorable reception for this kind of evidence; Annotation 167 A. L. R. 565. The authoritative pronouncement by the Supreme Court which was relied upon by the Commonwealth is Commonwealth v. Kline, 361 Pa. 434. The decision in this case, the cases cited therein and the cases following in its train must be carefully examined to determine whether there is a limit to this sort of evidence and whether the trial judge in the case at bar went beyond that limit.

In Commonwealth v. Kline, supra, defendant was on trial for statutory rape on his own daughter. The Commonwealth was allowed to show that during the month of the assault on his daughter he persisted in exhibiting himself to a neighbor woman. In Commonwealth v. Winter, 289 Pa. 284, where defendant was

tried for the murder of two children, a brother and sister, the Commonwealth was allowed to show that previously during the same day he had unsuccessfully solicited two older brothers of the children to commit sodomy. The action of the trial judge in Commonwealth v. Lipschutz, 89 Pa. Superior Ct. 142, in allowing evidence of other offenses with four other girls to be introduced against a defendant who was charged with a single act of indecent exposure with one girl was expressly approved by the Supreme Court in the Kline case.

In Commonwealth v. Ransom, 169 Pa. Superior Ct. 306, the admission in a rape case of evidence of rape of another woman in the same neighborhood and on the same night and of an attack on still a third woman in Youngstown, Ohio, two days previously was approved by the Superior Court.

The competency of this type of evidence in rape cases is the subject of careful examination by Mr. Wigmore in 2 Wigmore on Evidence (3d ed.), §357. His illuminating discussion rules out the intent principle in the case at bar because that principle applies chiefly where the doing of the act is admitted but the evil intent is denied. Here defendant denies doing the act. As to the design Mr. Wigmore says, at pages 266-267:

"(3) The Design or Plan principle (ante §304) requires that the former act or acts should indicate, by common features, a plan or design which tends to show that it was carried out by doing the act charged. Here it is obvious that there is much room for difference of opinion in a given case. The committing of a single previous rape, or rape-attempt, upon another woman may not in itself indicate such a design,—a view carefully examined in the following leading case: 1876, State v. Lapage, 57 N. H. 289, 295, 299, 303. . . . Nevertheless, a single previous act, even upon another woman, may, with other circumstances, give strong in-

dication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design.

"Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon character (ante, §194), it may carry with it great significance as to a specific Design or plan of rape. There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings."

All of the cases stress the necessity of a reasonably short interval of time between the prior offense and the offense on trial. Mr. Wigmore believes that where the charge is assault with intent former acts should be received "without any limitations except as to time". In Commonwealth v. Winter, 289 Pa. 284, 290, Justice Schaffer expressed the belief that anything "which throws light upon his state of mind just previous to the commission of the offense" is competent. In State v. LaPage, 57 N. H. 245 (a murder case cited by Wigmore), a rape four years previously was held to be too remote, although evidence as to an assault upon and solicitation of another girl at the place of the crime on trial three weeks earlier was allowed to show design. Three years was held too great an interval in State v. Larsen, 42 Idaho 517, 246 Pac. 313. In State v. Mertz, 129 Wash. 420, 225 Pac. 62, evidence of a subsequent offense six weeks later with the same girl and in People v. Gibson, 255 Ill. 302, 99 N. E. 599, of concurrent offenses with other girls were held inadmissible. Both decisions meet severe criticism from Mr. Wigmore.

In Commonwealth v. Ransom, supra, the Superior Court, speaking by President Judge Rhodes, states the elements essential to the admission of evidence of other offenses:

"This occurrence had (1) a logical bearing upon appellant's state of mind and his design or plan to forcibly ravish in the present case, and (2) was within a reasonable limitation as to time and place."

The cases cited by the Commonwealth fail to convince us that evidence of the prior offenses of defendant was admissible. In Andrews v. State, 196 Ga. 84, 26 S. E. (2d) 263, evidence of prior assaults upon women within the month were admitted in a rape case, but there a similarity of method was observed in all the offenses. In McKenzie v. State, 250 Ala. 178, 33 So. (2d) 488, a later assault with intent to commit rape was admitted to show the intent with which the act was done. In Talley v. State, 160 Fla. 593, 36 So. (2d) 201, evidence of five assaults upon other women was admitted in a rape case but the assaults were upon four women in the same area within a few days' time. In People v. Cosby, 137 Cal. App. 332, 31 P. (2d) 218, where defendant was charged with assault with intent to commit rape evidence that defendant had committed similar assaults upon other women after luring them to his apartment by promises of employment was held to be competent; but again the factor of design was involved because of the similar technique employed.

State v. Cupit, 189 La. 509, 179 So. 837, is the most extreme case cited by the Commonwealth. It is cited with approval in Commonwealth v. Kline. There, in a trial for assault with intent to commit rape upon a niece, the prosecution was allowed to introduce evidence of previous rape committed upon two other nieces eight years before. But the evidence was allowed because it showed the specific evil intent back of the assault on

trial. Wigmore believes that, where the charge is assault with intent to rape, any like sexual offenses with the same or another woman and prior or subsequent in time should be allowed in evidence, 2 Wigmore (3rd ed.), §357. Even here he says: "There should be some limitation of time, but merely to avoid the objection of unfair surprise": 1 Wigmore §194.

The offenses committed 11 years before by defendant now on trial cannot rightly be said to show an intent to ravish another young girl where defendant denies the act entirely. The former offenses were with pupils, the recent offense with a foster child. No common plan or design is observed. The former convictions do show an evil nature or disposition. Medical opinion inclines to regard the tendency of this type of offender to repeat as a reliable inference. The law proceeds more cautiously; the traditions of Anglo-American criminal jurisprudence inhibit: 1 Wigmore §194. Standing alone and proved only by the records the former offenses establish only a general disposition to wrong doing. But this type of general attack on a defendant's character is specifically rejected in Commonwealth v. Kline by the Supreme Court and in Commonwealth v. Ransom by the Superior Court.

In the case before us the evidence of five prior convictions of sex crimes with young girls was admitted only in connection with an offer to show that defendant, then under the supervision of a parole officer for these prior offenses, applied for permission to take a younger child into his home, disobeyed his instructions, took Dolores Arnold, who was 13 years old, into his home, acted deceptively with the parole officer about her, and finally actually disobeyed the instructions given by the parole officer to take Dolores back to the home where he had gotten her.

If the Commonwealth had been able to show these facts they would have been, in our opinion, proper evi-

dence of design. Certainly the one thing the ordinary man who had served 5 of a 15-year minimum sentence for sex crimes with young girls would seek to avoid would be association with young girls. Yet here is a man who with that incubus on his back actually sought to get a girl 13 years old into his home. According to the offer he not only threw away common prudence to get the girl into his home but abandoned honest and obedient dealings with his parole officer. From all these facts, including the former conviction, it would have been possible to arrive logically and justly at the conclusion that there was operating in defendant's mind just before the offense for which he was tried a lustful design to possess this young girl. Viewed in this light the case seemed to require application to the principle of Com. v. Kline, supra; State v. Jenks, 126 Kan. 493, 268 Pac. 850; McCreary v. Com., 158 Ky. 612, 165 S. W. 981, 173 S. W. 351; Murley v. Texas, 288 S. W. 441, and State v. Gummer, 51 N. D. 445, 200 N. W. 20, in all of which design was shown by former convictions.

At trial, however, the evidence of Orange Dickey, the parole officer, did not measure up to the offer. His testimony indicated virtual agreement with defendant with respect to defendant's having Dolores Arnold in his home. The evil design did not emerge from the evidence. Lacking evidence of design the only function of the prior convictions was to show that defendant was the sort of a man who once committed such a crime and might do so again. But the law does not countenance the bare idea that because a defendant committed one crime he will commit another. The exceptions to the general rule, heretofore alluded to, do not apply. The rule of Com. v. Ross, supra, allowing such evidence to affect the credibility of defendant as a witness, does not apply because the evidence of prior offenses was not employed by the Commonwealth

in rebuttal but in chief. The rule of Commonwealth v. DePofi, 362 Pa. 229, does not apply because there the evidence of 16 prior burglaries was allowed to assist the jury to determine the degree of guilt in a murder case. The rule of Com. v. Kline, supra, does not apply because the prior convictions were too remote and the connecting evidence did not materialize.

To be sure, the jury was instructed to disregard the evidence of prior convictions unless they found design. But the evidence does not show design and the prior convictions standing alone were too damaging to defendant to permit the effect to be cured by a simple instruction.

At trial defendant insisted that the prior offenses could not properly be shown by the records of conviction but only by showing the facts. Ordinarily prior offenses are best proven by the record: 4 Wigmore §1270. A judgment of sentence is a final and conclusive thing, having the merit of silencing inquiry as to whether the crime was really committed. The Commonwealth's plan to show the records of conviction and defendant's conduct in conniving, notwithstanding them, to get another young girl into his home was sound because together they tend to show design and intent. Perhaps in a proper case both the record of conviction, because of its conclusive effect, and the narrative of events, because of its informing power, would be competent.

Whether at the new trial which we believe necessary the Commonwealth is able to produce further or clearer proof of design remains to be seen. The relative propriety of proof of prior misconduct by records of conviction or by oral evidence may also be determined under the offer made at that time.

There were other subordinate assignments of error but this opinion need not be prolonged by discussing them. The failure of the Commonwealth's evidence

to measure up to its offer on the subject of prior convictions is sufficient. Entertaining these views, we make the following

*Order*

Now, September 12, 1951, defendant's motion for a new trial is granted.