# Commonwealth v. Ronello, Appellant.

*Criminal law—Indictments—Evidence—Variance—Name of defendant.*

1. Where an indictment charged the defendant with the killing of Guiseppe Visalli and from the evidence it appeared that the name of the deceased was Joe Wilson, there is a variance between the allegata and probata where there is nothing to show that Guiseppe Visalli and Joe Wilson were one and the same person, and a conviction in such case will be reversed.

*Criminal procedure—Trials—Circumstantial evidence—Identification—Inadequate charge to jury—Misleading statements in charge—Province of court and jury.*

2. At the trial of one accused of murder, a trial judge who states to the jury as a fact something which is misleading and not authorized by the evidence commits reversible error.

3. In a murder trial resulting in a verdict of guilty of murder of the first degree, the evidence to connect the accused with the homicide was entirely circumstantial and consisted of the testimony of a young woman, who said that she had seen a man by the light of a passing engine about eleven o'clock on the night when the killing was supposed to have occurred, on a road in the neighborhood where the body was found, and that afterwards she went to the jail and saw the prisoner, and believed he was the man whom she had seen on the road, and the testimony of two persons who said that a knife which was found two months later in the river at a point some twenty-five feet from the place where the body lay, and which was produced in court, looked like the

knife which they had seen in possession of the prisoner on the day of the crime. The court instructed the jury that the young woman had identified the prisoner as the man whom she had seen but did not instruct the jury as to how the evidence was to be considered and the degree of certainty which it must reach to warrant the conclusion of the identity of the prisoner with the man whom the witness had seen, and misrecited the testimony as to the knife by stating that the witnesses had identified the knife as the one which they had seen in the prisoner's possession. *Held,* that the conviction should be reversed.

4. In such case the court interfered with the exclusive prerogative of the jury by stating that the man seen on the road by the young woman had been identified as the prisoner and that the knife found in the river had been identified as the knife of the defendant.

5. Identification is a matter of inference and the probative weight to be accorded to the testimony of witnesses who speak as to this point is exclusively for the jury, to be judged by them in the light of the evidence in the case and in the light of the evidence upon which the inference is based.

Argued October 6, 1913. Appeal, No. 208, Jan. T., 1913, by defendant, from judgment of O. & T., Huntingdon Co., Sept. S., 1912, No. 9, on verdict of guilty of murder of the first degree in case of Commonwealth v. Frank Ronello. Before FELL, C. J., BROWN, MESTREZAT, POTTER, ELKIN, STEWART and MOSCHZISKER, JJ. Reversed.

Indictment for murder. Before WOODS, P. J.

The facts appear by the opinion of the Supreme Court.

The jury found a verdict of guilty of murder of the first degree, upon which sentence of death was passed. Defendant appealed.

*Errors assigned,* among others, were various instructions to the jury, various rulings of the trial judge and the sentence of the court.

*William Wallace Chisolm,* with him *Samuel I. Spyker,* for appellant.

*Charles C. Brewster,* District Attorney, and *Richard W. Williamson,* Assistant District Attorney, for appellee.

OPINION BY MR. JUSTICE STEWART, November 7, 1913:

The prisoner was charged in the indictment under which he was arraigned and to which he pleaded not guilty, with the felonious killing of Guiseppe Visalli, and was convicted of murder in the first degree. Strange as it may seem, for anything appearing in this record, Guiseppe Visalli may still be in full life and being. That a felonious killing of some one had occurred was placed beyond question by the evidence. The body of a slain man had been discovered at an early hour on Monday, the twenty-second day of July, 1912, at a point nearly midway between the borough of Huntingdon and the village of Ardenheim, at the foot of a steep embankment along the Juniata river, about 65 feet from the line of the Pennsylvania railroad, and about 30 feet from the public road leading from Huntingdon to Ardenheim. The body when found exhibited numerous wounds which had been inflicted by a knife or other sharp instrument. Any one of a half dozen of these would have been sufficient to cause death, while any one of three of them would have been sufficient to cause death almost instantaneously. Such was the medical testimony in the case. Manifestly these wounds could not have been self-inflicted; the circumstances established unmistakably a felonious killing, and from the number and character of the wounds, sixteen in all, might be derived every element of murder in the first degree: Com. v. Straesser, 153 Pa. 451. Was this the body of Guiseppe Visalli? Except as it was so shown, the corpus delicti laid in the indictment was not established, and the prisoner ought not to have been convicted. In every reference on the trial touching the individuality of the slain man, whether made by witnesses or counsel, the deceased was spoken of as Joe

Wilson. The witness who discovered the body spoke of it as that of Joe Wilson; so also did the medical gentlemen who performed the autopsy, the undertaker, and likewise the coroner. Never once during the trial was it referred to as the body of Guiseppe Visalli, but always as that of Joe Wilson. Even the trial judge, indicating in his charge the question which was for the jury's determination, referred to the body as that of Joe Wilson. His instruction was, "The question is not, who killed this deceased, but, did the defendant, Frank Ronello, kill the deceased, Joe Wilson?" And again, this occurs in the charge: "Was it his (the prisoner's) intention, and did he slay Joe Wilson?" The result of it all is that we have here a man convicted of murder in the first degree, when, for aught that appears in the record, the person named in the indictment as having been killed by the prisoner, is alive to-day. It may be that Joe Wilson and Guiseppe Visalli were one and the same; and it may be that such fact was known to the witnesses and the court and counsel who tried the case; but how are we, sitting as a court of review, charged with the duty and responsibility of determining from the record, and that alone, whether competent evidence was introduced which established the elements of the murder of Guiseppe Visalli, to satisfy ourselves that Guiseppe Visalli and Joe Wilson were the same? Were there nothing else in this record calling for reversal, this most remarkable variance between the indictment and the evidence would be more than sufficient. In the respect pointed out, this record is unique, and we venture to remark that the reputation of our criminal courts for careful observance of settled rules of procedure, heretofore so constantly maintained, will not suffer in the least if this case be allowed to retain undisturbed the distinction that we have thus given it.

No less serious and equally patent is the error committed by the trial judge in his charge to the jury. The evidence connecting the prisoner with the killing of the

man whose body was discovered was entirely circumstantial. The Commonwealth attempted to show, first, that the prisoner had been seen about 11 o'clock on the Saturday night when the killing was supposed to have occurred in the neighborhood where the body was found; and, second, that a knife which had been found two months later at a point some twenty-five feet out in the river from the place where the body lay, was a knife which the prisoner had in his possession the afternoon of the day when the crime was supposed to have been committed. In support of its first contention, the Commonwealth called a young woman who testified that in driving at night time from Huntingdon to her home along a public road leading to Ardenheim, when she reached a point not far from where the body was discovered, shortly after 11 o'clock, she saw a man hurriedly walking along the road; that just at this point the fire box of a passing engine on the railroad was thrown open and by the light thus shed over a distance of thirty-five feet she got such a view of the man as enabled her afterwards—how long afterwards does not appear—to identify in jail the prisoner as the man she saw, though an entire stranger to her. The evidence with respect to the knife was briefly this: Three witnesses testified to having been in the room of the prisoner during his absence on the same Saturday afternoon, and that one of them discovered in the coat pocket of the prisoner a knife of peculiar shape which all three witnesses then examined and afterwards replaced in the pocket where it had been found. The knife above referred to as having been found in the Juniata river opposite the place where the body was discovered, was produced on the trial, and the effort on the part of the Commonwealth was to show that it was the same knife that these witnesses had seen in the prisoner's possession. The Commonwealth's case rested wholly upon these two circumstances; except as the prisoner was the man seen by the young woman on the public road at night time near

the scene of the crime, and except as the knife found was the prisoner's knife, conviction was out of the question. So then with respect to each of these things, it was purely a question of sufficient identification. In his charge to the jury the trial judge assumed that the testimony of the young woman who expressed the belief that the prisoner was the man she saw on the public road at 11 o'clock that night in the neighborhood where the body was found, was an identification; and in reciting her testimony, without a word of comment as to its importance, or a word of instruction as to how it was to be considered by the jury, he adds, "She then testifies that after that (after her night experience) she went to the jail in Huntingdon and there identified the defendant as the man that she saw on the road that night, shortly after 11 o'clock." No other reference to the testimony of this witness occurs in the entire charge. What this witness said was that she had since seen the prisoner, and she believed he was the man she had seen upon the road. The evidence with respect to the identification of the knife found in the river with that previously seen in the possession of the prisoner was also assumed by the trial judge to establish identification, and was not made the subject of any comment or any instruction whatever. In reciting the testimony of the witnesses on this branch of the case he says in his charge, "That knife (referring to the knife found in the river) was produced in evidence and was identified by William Cahill and Arthur Foster to the best of their belief, as the knife that was in the blue coat which the defendant had hanging in his closet." In the first place this was a clear misrecital of the testimony. Cahill did not say that the knife produced on the trial was the knife he saw in possession of the prisoner "to the best of his belief"; all he would say in answer to the question put to him touching this most important matter was that "it looks to me like it; it looks as though it were made out of a file." Foster was no more certain or explicit in his testimony.

All he could say in answer to the question whether the knife was the same, was, "it looks something like the one I seen. It may not be it, but it is something similar to it." When it is remembered that it was upon the testimony of these witnesses that the Commonwealth relied to connect the prisoner with the crime, the materiality of the departure in the recital of the testimony in the course of the charge from what the witnesses actually testified, becomes too apparent to call for discussion. We have repeatedly said that if the trial judge states to the jury as a fact something not authorized by the evidence, and which was misleading, a reversal must follow. But more than this: not only was there a positive misrecital of the testimony in the charge, but effect was given to the testimony even as recited which must have been misleading to a degree; and, furthermore, it was a direct interference within the exclusive prerogative of the jury. Whether what these witnesses said amounted to an identification of the prisoner or the knife, was a question the jury alone could pass upon. It was for them to consider the circumstances detailed by each witness, and the opportunities these afforded for a safe conclusion with respect to identity. Failure on the part of the court to specially direct the attention of the jury to this most material evidence, seeing that upon it depended the issue of the case, would have been serious error; to leave the jury without instruction as to how it was to be considered, the degree of certainty it must reach to warrant a conclusion of identity, was, if possible, even' more serious error. Identification is necessarily a matter of inference, and the probative weight to be accorded to the testimony of witnesses who speak as to this point, is exclusively for the jury, to be judged by them in the light of the evidence in the case, and especially in the light of the facts upon which the inference is based. The charge of the court with respect to this most material and determining inquiry is open to three-fold objection; first, that it was an inadequate

presentation of the law and the evidence; second, that it misrecited the testimony of the witnesses on material points; and, third, that it trespassed far upon the peculiar prerogative of the jury in the manner we have pointed out.

It is not for us to express any opinion as to the guilt or innocence of the prisoner, even assuming that Guiseppe Visalli and Joe Wilson were one and the same; we discharge our whole duty when we decide that the prisoner did not receive the fair trial which the law accords to everyone accused of crime. For the reasons stated the judgment is reversed and a venire facias de novo is ordered.