Commonwealth *v.* Kline, Appellant.

Argued September 27, 1948. Before RHODES, P. J., HIRT, RENO, DITHRICH, ROSS, ARNOLD and FINE, JJ.

reargument refused November 24, 1948.

*Edward E. Petrillo*, with him *Edward G. Petrillo* and *Stone & Flick*, for appellant.

*M. A. Kornreich*, District Attorney, with him *Sidney W. Blackman*, Assistant District Attorney, for appellee.

OPINION BY DITHRICH, J., November 9, 1948:

Appellant was convicted and sentenced on a charge of statutory rape. He was alleged to have had carnal

knowledge of his daughter Barbara, who was under the age of sixteen at the time of the alleged offense. The date of her birth was June 14, 1931, and the date of the alleged offense was October 20, 1946, about midway between her fifteenth and sixteenth birthdays.

She testified that about 8:30 p. m. Sunday, October 20, 1946, after she had gone to bed, her father entered her bedroom. There was a door connecting her bedroom with the bedroom of her parents, and another door opening onto an upstairs hallway. It was through the latter door that her father was alleged to have entered her room. She said she got out of bed and turned on the light. Her father, who she said was entirely undressed, put his arms around her, told her not to be frightened, that there was nothing to be excited about, raised her nightgown and then in a standing position penetrated her. Very shortly thereafter her mother, who has since died, entered the room and Barbara said she told her in her father's presence what he had done to her. Although the offense was alleged to have been committed October 20, 1946, and was the only time her father had ever molested her, she told no one else about it and made no complaint until sometime in March, 1948, when the present proceeding was instituted. There was testimony that the girl had been reprimanded several times by her father for running around with boys and staying out as late as three, four or five o'clock in the morning, just before she made this complaint.

She testified that on the night in question "He came from down stairs in that condition [stark naked]" and on "previous occasions" he had gone to her room without any clothes on and had felt around her body as she lay in bed.

Appellant on direct examination denied that he had ever gone around the house naked in the presence of his children. In addition to Barbara there are three younger children, two daughters aged thirteen and twelve, respectively, and a son aged ten. Upon cross-

examination he was asked: "While you were living at 120 Canton Street [where the alleged offense took place] during the period of the fall of 1946, did you ever appear near or around the back porch of your house without any clothes on?" There was an immediate objection. The objection was overruled and an exception noted. Appellant answered: "Not that I remember of, unless no one was at home and possibly disrobed I may have gone down where we keep the soap in the kitchen cupboard."

The prosecution contends that it thereby laid the groundwork for the introduction of rebuttal testimony that, at or about the time of the commission of the offense for which defendant was on trial, he had exposed himself to a neighbor woman. The woman and her husband were permitted to testify, over strenuous objection, that appellant had appeared in the nude in the back doorway of his house when the neighbor woman had gone out on her back porch in shorts to hang up a tea towel. She said he kept it up for "About an hour and a half" and that every time she would go out on the porch he would open the screen door and expose himself, and when she would go in the house he would close the door, only to reopen it and appear in the doorway every time she went out on the porch. The learned president judge of the court below could see no error in the admission of this testimony since he had "specifically limited" it " 'on the point of credibility.' "

This so-called "rebuttal" evidence was not admissible to affect the defendant's credibility or for any other purpose. "The general rule is that on the trial for the commission of one offense evidence cannot be given against a defendant of other and unrelated crimes: Wharton's Criminal Evidence, 10th ed., section 29; Shaffner v. Com., 72 Pa. 60; Com. v. Saulsbury, 152 Pa. 554; Com. v. House, 223 Pa. 487": *Commonwealth v. Winter*, 289 Pa. 284, 290, 137 A. 261. This is an apt illustration of what Mr. Justice, now Chief Justice,

MAXEY apparently had in mind when he said: "There seems to be considerable misunderstanding of the rules of evidence relating to the *contradiction of witnesses*. No witness can be contradicted *on everything he testifies to* in order to 'test his credibility.' The pivotal issues in a trial cannot be 'side-tracked' for the determination of whether or not a witness lied in making a statement about something *which has no relationship to the case on trial*. The purpose of trials is not to determine the ratings of witnesses for general veracity. A witness can be contradicted only on matters germane to the issue trying. There is no rule more firmly established than this: 'No contradiction shall be permitted on collateral matters' ": *Commonwealth v. Petrillo,* 341 Pa. 209, 223, 19 A. 2d 288; *Zubrod v. Kuhn,* 357 Pa. 200, 203, 53 A. 2d 604.

"The test of materiality of a fact brought out on cross-examination is whether the party cross-examining would be entitled to prove it as a part of his own case": Henry, Trial Evidence, 3d Ed., §470.

In *Commonwealth v. Grauman (No. 2),* 52 Pa. Superior Ct. 215, where the charge was forgery and the trial court admitted in rebuttal certain notes, this Court said (pp. 217-218) : "There is no evidence . . . connecting these transactions with the transaction in question in such manner as would have made the testimony . . . regarding them admissible in the presentation of the commonwealth's case in chief. But on cross-examination the defendant testified that these notes, or some of them at least, were paid by the makers. This cross-examination did not relate to anything that the defendant had testified to in chief. It is thus seen that the question for decision is whether it was competent to impeach his credit as a witness by contradicting his testimony, brought out on cross-examination, as to these collateral and irrelevant matters. The general rule is that if a witness be cross-examined as to matters irrelevant to the issue, the party cannot discredit him by proving that he

testified falsely in relation thereto. The reasons for the rule are set forth very fully in Griffith v. Eshleman, 4 Watts, 51, and it has been recognized and applied in many subsequent cases, [citing cases]." See also *Hildeburn v. Curran,* 65 Pa. 59; *Commonwealth v. Clemmer,* 190 Pa. 202, 42 A. 675; *Conrad v. Werner,* 94 Pa. Superior Ct. 37; *Commonwealth v. Shultz,* 115 Pa. Superior Ct. 177, 175 A. 288; *Berliner v. Schoenberg,* 117 Pa. Superior Ct. 254, 178 A. 330.

For the reasons above stated, we are of the opinion that this case is within the rule and therefore that there was error in admitting the testimony which is the subject of the third assignment of error.

The third assignment of error is sustained; the judgment is reversed and a venire facias de novo is awarded.