## Commonwealth, Appellant, v. Kline.

Argued March 21, 1949. Before MAXEY, C. J., DREW, LINN, STERN, PATTERSON and STEARNE, JJ.

*M. A. Kornreich,* District Attorney, with him *Sidney W. Blackman,* Assistant District Attorney, for appellant.

*Edward E. Petrillo, Jr.,* with him *Stone & Flick,* for appellee.

OPINION BY MR. CHIEF JUSTICE MAXEY, April 11, 1949:

Charles James Kline was convicted in Warren County after trial on an indictment charging statutory rape on his daughter Barbara. He was sentenced to pay the costs of prosecution, a fine of $300.00, and imprisonment in the Western Penitentiary for not less than seven and one-half years and not more than fifteen years. On appeal to the Superior Court the judgment was reversed because of alleged errors in the admission of evidence.

The date of the commission of the alleged offense was October 20, 1946, when the daughter was 4 months and 6 days past 15 years of age. It is not necessary to relate all the unsavory details of the crime charged. The only question before us is whether the court erred in admitting the testimony of Mr. and Mrs. Everett Borg, neighbors of the defendant, who were permitted to testify that the defendant "late in October 1946" had exhibited himself in a nude condition and lasciviously to Mrs. Borg. The back porch of the Borg home and of the defendant's home were about fifty feet apart. Mr. and Mrs. Borg were called to rebut defendant's denial on cross-examination that he had ever exposed himself

without any clothes on to anybody (with possibly one exception, not material here). The evidence was objected to for the reason that "the defendant in this case is not charged with indecent exposure but with rape, and any evidence of this type would only prejudice the jury against him without any material benefit to the Commonwealth." Mrs. Borg testified: "I was finishing the dishes and went out on the porch to hang up my tea towel when Mr. Kline appeared in the doorway of his house without any clothes. I became frightened and went in the house. I stood behind the door and he immediately went behind his kitchen door. There is a window there which shows that there was somebody back there. I went out on the porch again and the same thing happened again. I called my husband . . .". When her husband stood in the downstairs window Kline did not make any appearance. Mrs. Borg continued: "I went out on the porch and he [Kline] would appear in the door, I would go in and he would step back and close the screen door. After this went on for an hour I set a trap for him. In our dining room we have venetian blinds." She and her husband watched Kline through the blinds. She was asked: "Did he [Kline] go through any actions or movements?" She answered: "It was just bodily motions." When she was also asked as to his nakedness she said he may have had shoes on but other than that he had no clothes on at all.

Mr. Borg testified that he "peeked through the blind" and saw Kline "in front of the screen door completely undressed". He said he saw Kline in that nude condition for a period of fifteen minutes. The time was at 3:00 o'clock in the afternoon. He said Kline "pushed the screen door completely open against the railing and stood in front of the screen door". He also testified that after observing Kline for about fifteen minutes he, the witness, "called the police".

The Superior Court said: "This so-called 'rebuttal' evidence was not admissible to affect the defendant's credibility or for any other purpose." The court then quotes from our opinion in *Commonwealth v. Petrillo,* 341 Pa. 209, 223, 19 A. 2d 288, where we said: "No witness can be contradicted on everything he testifies to in order to 'test his credibility.' The pivotal issues in a trial cannot be 'side-tracked' for the determination of whether or not a witness lied in making a statement about something which has no relationship to the case on trial."

It is an established principle in criminal procedure that proof of the commission of another crime cannot be put in evidence as a proof of the commission of the crime charged, unless there is such connection between them as to give the fact of the commission of the other crime probative value on the issue of the defendant's guilt of the crime charged. Henry's Pennsylvania Trial Evidence, Third Edition, Section 30, pages 48 and 49, says it is "a fundamental principle that a prisoner shall not be required to answer for the commission of an offense that is not specially charged against him in the indictment. But if criminal conduct proposed to be proved forms in any way a link in a chain of circumstances which connects the defendant with the crime charged, it is admissible. In such case, in order that one act may be evidence of another, there must be some connection between them which may be traced in a general design, purpose or plan of the person doing the act, or which may be shown by such circumstances as necessarily tend to establish that the person who committed one act must have been guilty of the other. . . . If facts offered to be proved bear on the offense charged and tend to prove a fact in issue . . . such proofs are admissible even though they incidentally tend to prove the commission of another offense." Citing *Goersen v. Com.,* 99 Pa. 388; *Com. v.*

*Coles,* 265 Pa. 362, 367; and *Com. v. Edwards,* 318 Pa. 1. In this last named case this Court said in an opinion by Chief Justice FRAZER (p. 9): "The law is clear that evidence of offenses other than the one for which a defendant is on trial, is admissible if . . . the prior misconduct tends to show the state of mind of the prisoner upon the act of which he is accused."

In *Commonwealth v. Winter,* 289 Pa. 284, 137 A. 261, defendant was found guilty of the murder of two children. He was sentenced to death. On appeal for a new trial it was alleged that there was an error in the trial because it was improper to admit the evidence against defendant that on the morning of the day the two children came to their death he had solicited their two older brothers to commit sodomy. This Court in finding no error in the admission of that evidence said: "The courts are bound to recognize, particularly in crimes relating to matters of sex . . . that the mental state of the accused is an important factor; anything which throws light upon his state of mind just previous to the commission of the offense with which he is charged strongly illuminates his place in the picture of the crime and gives better opportunity to estimate the likelihood of his connection with it. . . . In the instant case it is the theory of the prosecution that the defendant killed these children as a result of his having debauched or attempted to debauch them, and,—as showing the state of his mind, just prior to his coming in contact with them, as being such as would lead him to the commission of crime upon them,—it was proper and relevant to show his crime-seeking attitude with other children. This takes the evidence out of the rule as to unrelated crimes and makes it competent and proper for reception."

In *Commonwealth v. Lipschutz,* 89 Pa. Superior Ct. 142, the defendant was indicted for indecent assault and indecent exposure. Four girls whose ages ranged from 8

to 11 years testified, each in support of a single incident involving the witness and the appellant. The conviction was reversed because of the inadequacy of the judge's charge, but in the Superior Court's opinion Judge, now Justice, LINN said: "In his opinion refusing a new trial, the learned trial judge states that the evidence was received because the offenses were of a 'substantially similar character, closely connected in point of time, and were parts of a continued scheme or practice.' If the jury had been so informed, and had also been instructed that the evidence of those two children might aid in identifying appellant as the offender against the other two children, or in disclosing his intention and purpose, appellant's claim would have no foundation."

In *Commonwealth v. Winter, supra,* this Court expressed a dictum to the effect that it would be relevant "where the charge was rape to show that just prior to the commission of that crime the prisoner had attempted to ravish another woman".

Wigmore, Third Edition, Volume II, Section 357, says: "Where the charge is assault with intent [to rape], former acts of the sort should be received without any limitation except as to time; though the Courts can hardly be said to have accepted this result fully. . . . a single previous act, even upon another woman, *may,* with other circumstances, give strong indication of a design (not a disposition) to rape; and a previous act of the sort upon the same woman ought in itself usually be regarded as indicating such a design. Courts have shown altogether too much hesitation in receiving such evidence. Even when rigorously excluded from any bearing it may have upon Character, it may carry with it great significance as to a specific Design or plan of rape.[1]

---

[1] "In proving Intent, the act is conceded or assumed; what is sought is the state of mind that accompanied it. In proving Design, the act is still undetermined, and the proof is of a working plan.

There is no reason why it should not be received when it does convey to the mind, according to the ordinary logical instincts, a clear indication of such a design. There is room for much more common sense than appears in the majority of the rulings."

That the courts in many states have admitted evidence of other indecent assaults made by defendant on trial for a specific indecent assault upon the female named in the indictment is illustrated in the following cases.

In *State v. Cupit,* 179 So. 837, 189 La. 509, defendant was convicted of assault with intent to commit rape. His victim was a fourteen year old niece. Evidence was admitted showing that defendant had raped the child's sister and another niece some years before this attempt and that he had been arrested on a charge of having raped another niece.

*In People v. Cosby,* 31 P. 2d 218, the defendant was indicted for assault with intent to commit rape. A woman had placed an advertisement in the newspaper soliciting work, giving her name and telephone number. She later received a telephone call from a man whom she afterwards discovered to be the appellant. In response to an invitation she went to what was an old-fashioned residence which had been converted into housekeeping rooms. Appellant met her on the steps and invited her to his apartment ostensibly to take down some of her references. She did so. He attempted an assault upon her. At the trial the court admitted testimony that on two previous occasions appellant had lured other women to his apartment under similar circumstances. One of these occasions was almost exactly three months before the commission of the

operating towards the future with such force as to render probable both the act and the accompanying state of mind. The Intent is a mere appendage of the act; the Design is a force producing the act as a result." Ibid, Section 300.

crime charged. Evidence was also admitted that on August 8, 1933, nine days before the commission of the crime charged he lured another woman to his apartment and indulged in similar conduct.

In *Murley v. State,* 288 S. W. 441, the facts were that the appellant obtained entrance to the home of his victim on the pretence that he was a chiropractor and that he wanted to employ her to work in his office and he promised that as soon as she began to work for him he would treat her professionally without charge. He began at her home what he called adjustments, which resulted in her forcible ravishment. The prosecution was permitted to offer evidence of other females who testified to the appellant's representations to them that he was a chiropractor and that he wished to give them adjustments, whereas he was in fact not a chiropractor but a paperhanger and painter. The admission of this evidence was upheld by the Court of Criminal Appeals of Texas.

In *Melton v. State,* 184 Ga. 343, 191 S. E. 91, a defendant was accused of rape. His attempted attack on another party the next night was admitted to "illustrate the bent of the defendant's mind, his plan and scheme . . . and to identify the accused as the perpetrator".

In *State v. Driver,* 107 S. E. 189, the West Virginia Supreme Court held that upon prosecution for attempt to rape a twelve-year-old girl, evidence was admissible that accused had shown pictures of nude women to his victim and other girls, and requested them to permit him to photograph them without clothes on. Objection was made to this testimony on the ground that it "in no way tended to evidence the crime alleged in the indictment, and was introduced after the evidence in chief had been given, at an improper time in the trial, after rebuttal evidence had begun." The court said the evidence "was permissible to show a sinister design . . . and clearly in-

dicative of his [the defendant's] state of mind toward her".

In *Roth v. Roth,* 90 App. Div. (N. Y.) 87, 85 N. Y. S. 640, the issue was whether or not the respondent had committed adultery with the corespondent on a certain date. Evidence was received showing that at an earlier date than the one named in the libel the corespondent occupied a bedroom with the respondent. In overruling the objection to this evidence the Court said: "The evidence was received merely for the purpose of showing an inclination and lascivious desire, from which the jury might infer that on the subsequent occasions when the parties were together during the period covered by the issues submitted, under circumstances affording an opportunity for the gratification of such inclination and desire, it was probable that they committed adultery. For this purpose, we think the evidence was admissible."

That evidence of the commission of other similar crimes may be given to show the *plan or design* on the part of the defendant to commit such crimes has often been judicially recognized. The word "design" implies a plan formed in the mind. That an individual who commits or attempts to commit abnormal sex offences is likely to have such a mental "plan" finds recognition in the fact that when a defendant is charged with the commission of a sexual offence the law is more liberal in admitting as proof of his guilt evidence of similar sexual offences committed by him than it is in admitting evidence of similar offences when a defendant is charged with the commission of non-sexual crimes. The fact that A, who is being tried for the murder of Y, was one time convicted of murdering X, has no probative value to prove A guilty of murdering Y, if the two murders were in no way related. On the other hand, if A is being tried for the rape or attempted rape of Y the fact that recently he raped or attempted to rape X is admissible in evidence because it tends to prove that he possessed such an ab-

normal mental or moral nature as would likely lead him to commit the offence charged.[2] "Human nature constitutes a part of the evidence in every case. We more easily believe that a person has done what we would have expected under the circumstances; and we require a greater degree of evidence to satisfy us that a person has done something which would be unnatural or improbable." *Greene v. Harris,* 11 R. I. 5, 17.

The defendant's act against his neighbor's wife and his act against his daughter at about the same period of time were both in the nature of an indecent assault. In one case the assault was against a neighbor woman's

---

[2] It may be argued that a man who commits the crime of murder or arson or larceny or embezzlement has also such an abnormal mental or moral nature as would lead him to commit other crimes of the same kind. But it cannot be said that in every instance where a man commits a crime when motivated by hatred or revenge or cupidity that he exhibits such abnormal behaviour as does a man who commits an unnatural sex crime. A man may commit murder because of an altercation or he may commit arson in order to obtain revenge or he may commit larceny or embezzlement because of hunger or pressure of debt and after committing any of these crimes and paying the penalty therefor he may never repeat the offense. On the other hand, criminal records show that persons inclined to perverted sexual behavior often repeat the offense. Thoinot and Weysse on Medico-Legal Moral Offences, page 250, say that "Lasegue in an epoch-making memoir dated 1877" characterized indecent exposure as a "morbid type of genital aberration". They say that anyone who indulges in it is a "type of degenerate exhibitionist" and these authors declare that "one of the characteristics of exhibitionism is its *repetition*". (The emphasis on the word "repetition" is theirs.)

The difference between the probative value of evidence of the commission of other crimes motivated by hatred or revenge or cupidity and the probative value of evidence of a crime motivated by perverted sexual instincts may be a difference only in degree, but as Justice HOLMES said in his dissenting opinion in *Haddock v. Haddock,* 201 U. S. 562, 631: "I have heard it suggested that the difference is one of degree. I am the last man in the world to quarrel with a distinction simply because it is one of degree. Most distinctions, in my opinion, are of that sort, and are none the worse for it."

sensibilities. In the other case the assault was against his daughter's sensibilities and against her person. The defendant's indecent exposure to his neighbor showed that he was of that type called an exhibitionist and when he by his denial raised an issue as to the truth of the charge against him by his daughter, the testimony of his neighbor as to his exhibitionism was material and relevant. Without this testimony of Kline's aberrant conduct at the time fixed the jury might be reluctant to believe that he committed the unnatural act with which he is charged. Wigmore in his "Principles of Judicial Proof" (page 92) says: *"Moral Character of an Accused.* —That specific acts of misconduct have probative value in leading to a belief as to the existence of a moral trait of more or less constant nature is undoubted:" Thayer in his "Preliminary Treatise on Evidence" (page 265) says: "Unless excluded by some rule or principle of law all that is logically probative is admissible in evidence."

Kline's abnormal conduct toward Mrs. Borg "late in October 1946", as testified to by her and her husband, was a fact which, if credited, became logically probative of the abnormal offence Kline was charged with perpetrating on his own daughter at the same period of time The evidence was therefore admissible.

The judgment of the Superior Court is reversed and the judgment and sentence of the Court of Oyer and Terminer of Warren County is reinstated.

Justices HORACE STERN and ALLEN M. STEARNE dissent.

———

DISSENTING OPINION BY MR. JUSTICE HORACE STERN AND MR. JUSTICE ALLEN M. STEARNE:

We would affirm the judgment of the Superior Court in this case on the opinion of Judge DITHRICH, 163 Pa. Superior Ct. 408 ,62 A. 2d 73.