## Commonwealth *v.* Ransom, Appellant.

Argued April 12, 1951. Before Rhodes, P. J., Hirt, Reno, Dithrich, Ross, Arnold and Gunther, JJ.

*Joseph Solomon,* for appellant.

*John S. Powers,* Assistant District Attorney, with him *Sherman K. Levine,* District Attorney, for appellee.

OPINION BY RHODES, P. J., July 19, 1951:

Defendant has appealed from convictions on two bills of indictment, charging, inter alia, robbery and rape, and the sentences thereon. On bill No. 2, September Term, 1950, in the Court of Oyer and Terminer of Lawrence County, charging robbery, defendant was sentenced to undergo imprisonment in the Western State Penitentiary for a term of not less than one and one-half years nor more than three years to begin to be served after sentence at No. 3, September Term, 1950, in the Court of Oyer and Terminer of Lawrence County, charging rape. On the latter bill defendant was sentenced to the Western State Penitentiary for a term of not less than two and one-half years nor more than five years. Defendant was also indicted on bill No. 4, September Term, 1950, in the Court of Oyer and Terminer of Lawrence County for robbery, larceny, receiving stolen goods, and assault and battery upon the person of one Gisella Morganti. Defendant's counsel moved to consolidate the three cases for trial. It was ordered that defendant be tried on bills Nos. 2 and 3, September Term, 1950, before the same jury, involving the same victim, Helen Brasile; separate verdicts of guilty were rendered. The court ordered a separate trial on bill No. 4, September Term, 1950. Defendant's motion for a new trial was refused by the court below, and he has appealed from the sentences imposed on the robbery and rape convictions.

Appellant alleges that the court below erred in refusing his motion for a new trial. He questions the admissibility of evidence of other offenses, the correctness of the charge of the court to which only a general exception was taken, and the sufficiency of the evidence as to identity. He also avers that the verdict was against the weight of the evidence.

A brief recital of the facts as established by the evidence is necessary to an understanding of appellant's contentions. The Commonwealth showed by the evidence which it produced that about midnight on May 23, 1950, or in the early morning of May 24, 1950, Helen Brasile was attacked while she was walking east near the intersection of East Washington Street and Almira Avenue in the City of New Castle, Lawrence County. She was accosted and grabbed by a man who said, "No use trying to struggle sister, you are not getting away." He forced his fingers down her throat and dragged her into an alleyway. She there lost consciousness. She was then raped, and this was confirmed by the medical testimony. Her assailant also robbed her of her purse which contained $28 in cash. Miss Brasile, the victim, was positive in her identification of appellant as her assailant. She identified him from his appearance on the night of the attack and by his voice. She testified: "Q. In other words, you were able to turn around and face this man? A. I certainly was. Q. And in the light of the street light you saw him? A. Yes, I did. . . . Q. Did the man that reached his arm around you, dragged you ten feet, is he in the court room at the present time? A. Yes, he is. Q. Will you point him out to the jury? A. Right there. Q. Is that Mr. Ransom, the defendant? A. Yes, it is. Q. And are you positive of that? A. Yes, I am . . ."

The Commonwealth, over the objection of counsel for appellant, called as a witness Gisella Morganti, who testified that she had been attacked by appellant

about fifteen minutes after ten on the same evening of May 23, 1950. She was walking toward her home which was also located in the City of New Castle when she was approached by appellant; she screamed and ran. She testified that appellant "came up over the terrace after me, grabbed me through the waist from behind, threw me down like a sack of potatoes." A woman who lived next door heard the struggle and called out, "What is going on down there"; whereupon .appellant grabbed Miss Morganti's purse, containing $18, and fled. Miss Morganti definitely identified appellant, and testified as follows: "Q. And would you be able to identify that person that accosted you? A. Yes, sitting right over there. Q. And that is Mr. Ransom? A. Ransom. Q. Are you positive of that? A. I am positive. . . . Q. And you were able to see him in the night light in the conditions that existed there? A. Yes. Q. And you identified him to be Owen Ransom, the defendant? A. That is right. Q. Could you be mistaken? A. I cannot be."

The Commonwealth called as its first witness, subject to objection by appellant's counsel, Helen Bernt, of Youngstown, Ohio. The trial judge permitted the calling of this witness out of order to permit her early return to Ohio; and to this there was no objection by defense counsel then nor has it been made subject of . complaint now.[1] The objection of appellant's counsel to the introduction of this testimony was on the ground that it was testimony of an unrelated offense introduced for the purpose of creating prejudice, and hav-

---

[1] At the oral argument the order in which the Commonwealth submitted its evidence was criticised. "We must look at the real competency of the evidence and not at the order of its reception; and when we find that it was all finally competent, we will not reverse, because of the time or order of its introduction." *Carroll v. Commonwealth*, 84 Pa. 107, 125. See, also, *Com. v. Gormley*, 78 Pa. Superior Ct. 294, 298.

ing no bearing on the facts at issue. The purpose stated by the Commonwealth in calling this witness was to show a state of mind on the part of appellant on the night Miss Brasile was attacked, and to show design or plan to rape.

This witness testified that she saw appellant in the early morning of Sunday, May 21, 1950, while on her way home in Youngstown, Ohio; that appellant stopped his car and offered to take her home; that she accepted his offer; that in proceeding to the place which she had designated he stopped his car and made advances toward her. She further testified: "Q. When he wanted to have intercourse state whether you consented to an act of intercourse? A. No, I didn't consent, he was fighting with me and he was hitting me. He grabbed me by my hair . . ., I said rather than kill me go ahead." The witness also testified that appellant committed an act of sodomy upon her. She finally succeeded in getting out of appellant's car on the pretext of arranging her hair. Then she took off her shoes while he was not looking, and asked him for her purse and coat. Appellant refused to give to the witness her purse and coat, and she started to run down the street, where she found a taxicab and asked the driver to secure the license number of appellant's car, which he obtained.

Appellant in testifying on his own behalf denied attacking Miss Brasile or Miss Morganti on the night of May 23, 1950, and offered an alibi as a defense. His wife corroborated him in his testimony that he listened to a baseball game on the radio that evening and retired about 10:45 p.m. Two other witnesses testified that appellant was present with them on the evening of May 23, 1950, between 7:30 p.m. and 9:40 p.m. On cross-examination appellant admitted that he had been in Youngstown, Ohio, early Sunday morning, May 21st; that Miss Bernt accepted his invitation to get in his

car, a 1949 Lincoln sedan; and that he had sexual intercourse with her. He denied performing any unnatural act. He further testified that he returned to his home in New Castle later that morning.

Appellant argues that the evidence of sexual offenses with another woman, which occurred in Ohio, two days before was inadmissible as having no logical bearing upon the offenses of robbery and rape upon the person of Miss Brasile in New Castle, for which he was on trial. Appellant also claims that such evidence was highly prejudicial. There is a difference of judicial opinion as to whether evidence of rape upon another woman or of other sexual offenses is admissible against a defendant being tried on a charge of rape.[2] 2 Wigmore, Evidence, §357, pp. 265-269 (3d Ed.). However, we are of the opinion that evidence of the prior sexual offenses with another woman in Ohio was admissible under the authority of *Com. v. Kline,* 361 Pa. 434, 65 A. 2d 348, reversing the ruling of this Court in 163 Pa. Superior Ct. 408, 62 A. 2d 73. Where the charge is rape, the committing of a single previous rape or rape attempt upon another woman may, with other circumstances, give strong indication of a design (not a disposition) to rape. 2 Wigmore, Evidence, §357, pp. 265, 266, 267 (3d Ed.). The Ohio incident, whether or not technically rape, was at least an attempt

---

[2] See the following cases holding evidence of other sexual offenses with women other than the prosecutrix or victim to be inadmissible as having no logical bearing on a charge of rape or attempted rape: *People v. Whalen,* 70 Cal. App. 2d 142, 160 P. 2d 560; *State v. Machen,* 56 Idaho 755, 58 P. 2d 1246; *State v. Haney,* 219 Minn. 518, 18 N.W. 2d 315; *State v. Spinks,* 344 Mo. 105, 125 S.W. 2d 60; *Hall v. State,* 67 Okla. Cr. 330, 93 P. 2d 1107; *Landon v. State,* 77 Okla. Cr. 190, 140 P. 2d 242; *State v. Poole,* 161 Ore. 481, 90 P. 2d 472; *Barber v. Com.,* 182 Va. 858, 30 S.E. 2d 565. See The Rule of Exclusion of Similar Fact Evidence: America, by Julius Stone, 51 Harv. L. Rev. 988, 1012.

at sexual intercourse with a chance acquaintance by the use of considerable force and intimidation. This occurrence had (1) a logical bearing upon appellant's state of mind and his design or plan to forcibly ravish in the present case, and (2) was within a reasonable limitation as to time and place. Although such evidence may not be admissible to show a lustful disposition generally, it is admissible to show a design—a plan formed in the mind—upon the part of a defendant to commit rape; and in the present case it conveys a clear indication of such a design. See 2 Wigmore, Evidence, §402, pp. 369, 370 (3d Ed.). The trial judge very properly in his charge made it clear to the jury that evidence of other offenses was not to be treated as proof of the offenses for which appellant was being tried, and that such evidence was admitted only to show appellant's state of mind and his design or plan in relation to the offenses for which he was on trial. In addition to such reference in the general charge, the trial judge affirmed and read to the jury appellant's seventh point, which reads as follows: "Number seven: Evidence of the commission of an offense other than the ones the defendant stands charged with today are not proof of the offenses charged here in court and should not be treated as such by the jury. They are before you only to clarify the defendant's plan or design or to show his mental state immediately prior to the alleged commission of the offenses charged in court today. He is being tried only for the offenses of rape and robbery alleged to have been committed against Miss Brasile, the complainant in this case before us." Under the circumstances, evidence of the sexual offenses committed in Ohio was properly held admissible by the trial judge, and the admission of such evidence did not constitute a violation of the rule announced in *Com. v. Williams,* 307 Pa. 134, 148, 160 A. 602, that the Commonwealth may not prove dis-

tinct crimes unconnected with that laid in the indictment as substantive proof of the crime for which the accused is being tried.

The testimony of Miss Morganti that she was attacked by appellant at ten o'clock on the evening of May 23, 1950, that appellant pursued her, grabbed her around the waist, threw her to the ground, and fled when a neighbor overheard the scuffle was also admissible. In both the Brasile and Morganti affairs, the attack was made in the same general manner upon a chance victim. The attack upon Miss Brasile took place only two hours after the attack upon Miss Morganti, and in the same general vicinity in the City of New Castle. They constitute a chain of closely connected crimes for a common purpose. See *Com. v. Brooks*, 355 Pa. 551, 553, 50 A. 2d 325; *Com. v. Schultz*, 168 Pa. Superior Ct. 435, 441, 79 A. 2d 109. Miss Morganti's testimony was admissible to show (1) appellant's state of mind and his design or plan to rape and rob any woman that he happened to meet while alone and unprotected that night, and (2) as bearing upon identity. The fact that appellant succeeded only in grabbing Miss Morganti's purse does not mean that his violent attack upon her was necessarily devoid of an intention to commit a sexual offense. Although assault is an element of both robbery and rape, the assault upon Miss Morganti was of such severity that it could not reasonably be limited to attempt to rob.

It is widely recognized, as an exception to the general rule excluding evidence of crimes other than that charged in the indictment, that evidence of the commission of other similar crimes may be given to show design or plan on the part of a defendant to commit the crime of which he is charged. *Com. v. Kline*, supra, 361 Pa. 434, 443, 65 A. 2d 348; *Com. v. Darcy*, 362 Pa. 259, 282, 66 A. 2d 663; *Com. v. Foster*, 364 Pa. 288, 292, 72 A. 2d 279; *Com. v. Krolak*, 164 Pa. Superior

Ct. 288, 290, 64 A. 2d 522. See, also, *Com. v. Strantz*, 328 Pa. 33, 44, 195 A. 75; *Com. v. De Pofi*, 362 Pa. 229, 66 A. 2d 649. And evidence of offenses other than the one for which a defendant is on trial is admissible if the prior misconduct tends to show the state of mind of the prisoner upon the act of which he is accused. *Com. v. Edwards*, 318 Pa. 1, 9, 178 A. 20. This is especially true of sex offenses where evidence of a similar prior offense, not too remote, is also admissible because it tends to prove that the accused possessed such an abnormal mental or moral nature as would likely lead him to commit the offense charged. *Com. v. Kline*, supra, 361 Pa. 434, 443, 444, 65 A. 2d 348.

Evidence of appellant's misconduct with Miss Bernt and of the assault upon Miss Morganti was admissible "to illustrate the bent of the [appellant's] mind, his plan and scheme . . . and to identify the accused as the perpetrator"[3] of the attack upon Miss Brasile. The three occurrences were characterized by the manifestation of the same state of mind and sinister design or practice on the part of the assailant, identified on each occasion as the appellant, to rape and rob. Evidence of the prior offenses committed by appellant in the same general manner could be received also to prove the identity of appellant as an inference from the similarity of method and purpose. Underhill's Criminal Evidence, §185, p. 339 (4th Ed.).

Appellant also complains of that portion of the charge of the court wherein, after reviewing the testimony of Miss Morganti as to appellant's alleged attack upon her, the trial judge stated: "Now, that testimony is part of the testimony referred to by the court earlier in its charge of related sexual offenses being admissible for the purpose of showing plan and

---

[3] See *Melton v. State*, 184 Ga. 343, 191 S.E. 91, quoted in *Com. v. Kline*, 361 Pa. 434, 442, 65 A. 2d 348, 351.

design, or state of mind on the part of the perpetrator in such offenses. You will recollect our previous discussion of the law in that connection." When the charge is considered in its entirety, as it must be (*Com. v. Eberhardt*, 164 Pa. Superior Ct. 591, 604, 67 A. 2d 613), we do not think that this isolated portion thereof is fundamentally erroneous or that it could have misled the jury. For the reasons which we have previously stated, the testimony of Miss Morganti was admissible and relevant for a limited purpose, that is, as to appellant's state of mind and his design or plan to commit the rape and the robbery for which he was being tried, and upon the question of appellant's identity. In affirming appellant's seventh point, as well as previously in his charge, the trial judge stated the applicable principle. In so far as a portion of the charge now questioned seemed to limit the relevance of Miss Morganti's testimony to related sexual offenses, it was not reversible error. The charge as a whole was clear on this point. Appellant's counsel took only a general exception to the charge of the court, and this reaches only basic and fundamental error therein. *Com. v. Ricci*, 161 Pa. Superior Ct. 193, 196, 54 A. 2d 51; *Rockey v. Ernest*, 367 Pa. 538, 80 A. 2d 783.

Appellant further complains that the trial judge in his charge invaded the province of the jury by characterizing Miss Morganti's identification of appellant as a "positive" identification. The charge of the court as to identity was entirely proper and fair to the appellant. Both Miss Morganti and Miss Brasile definitely identified appellant as their assailant, and testified positively and without qualification that it was appellant who attacked them. See *Com. v. Sharpe*, 138 Pa. Superior Ct. 156, 159, 10 A. 2d 120. It was not error for the trial judge to refer to such testimony as positive. Nevertheless, appellant is critical of Common-

wealth's evidence relating to identity, and contends that conclusive and logical evidence is lacking. Miss Morganti and Miss Brasile described the circumstances under which their identification of appellant was made. As to this the court charged: "Testimony tending to prove identity is to be scrutinized with extreme care. The possibility of human error or mistake, and the probable likeness or similarity of objects and persons are elements that you must act upon in considering such testimony. What knowledge did the witness have of the person or thing the witness seeks to identify? What opportunity did the witness have to see the person or thing he is called upon to identify? Also, what were the circumstances under which the witness saw the person or object? These factors you must carefully consider in passing upon the credibility that you attach to such witness' testimony, and you must be satisfied beyond a reasonable doubt as to the accuracy of the witness' identification of the person or thing." Consequently, it was for the jury to "consider the circumstances detailed by each witness, and the opportunities these afforded for a safe conclusion with respect to identity." *Com. v. Ronello,* 242 Pa. 381, 387, 89 A. 553, 555.

Finally, appellant argues that the verdict was against the weight of the evidence. A motion for a new trial on that ground is addressed to the sound discretion of the trial judge, and the action of the court below would be reviewable here only for abuse of discretion. The evidence of the Commonwealth was in sharp conflict with that of the defense. The jury could have accepted the alibi testimony and returned verdicts of not guilty. But the facts to be found from the evidence and the credibility of the witnesses were entirely for the jury. *Com. v. Walker,* 283 Pa. 468, 474, 129 A. 453. There was ample evidence to support

318

the verdicts of guilty returned by the jury. Appellant has not shown any reversible error which would entitle him to a new trial.

Judgments and sentences are affirmed.

DITHRICH and ROSS, JJ., dissent.