364 A.2d 944
**COMMONWEALTH of Pennsylvania**
v.
**Robert BRADLEY, Appellant.**

Superior Court of Pennsylvania.
Sept. 27, 1976.

210

William C. Costopoulos, Lemoyne, Richard D. Ballou, Honesdale, for appellant.

Nicholas A. Barna, Stephen G. Bresset, Honesdale, for appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, VAN der VOORT and SPAETH, JJ.

HOFFMAN, Judge:

Appellant was convicted by a jury on June 27, 1974, of forcible anal sodomy[1] on Robert M. sometime during December, 1968. He appeals from the judgment of sentence on the ground that the trial court impermis-

---

1. Technically, appellant was convicted of performing involuntary deviate sexual intercourse. See Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, eff. June 6, 1973; 18 Pa.C.S.A. § 3123.

sibly allowed the introduction into evidence of other acts of sodomy allegedly committed by appellant on Robert M. and on other persons on occasions prior to, and subsequent to, the date of the crime charged in the indictment. We agree with this contention, and we reverse the judgment of sentence.

On August 21, 1973, appellant was arrested and charged with having committed forcible anal sodomy on Robert M. during December, 1968. At the time of the alleged crime, appellant was a member of the supervisory staff of Hillcrest School, an institution for mentally retarded children, and the victim was a thirteen-year-old resident of that school. At trial, Robert M. testified that appellant engaged in forcible anal sodomy on his person in December, 1968. The victim also testified that appellant committed forcible acts of oral and anal sodomy on his person at least once every two weeks for a period of one year prior to the December, 1968 incident. The Commonwealth then called four other witnesses who were former residents of the Hillcrest School to testify about involuntary deviate sexual acts they had witnessed appellant commit. John E. testified that between 1965 and 1971, the appellant committed forcible acts of anal intercourse on his person on four separate occasions. Theodore J. testified that on one occasion he observed the defendant performing anal intercourse on John E. Carl H. testified that he saw appellant commit anal sodomy on Grant B. and force Robert M. to commit oral sodomy on appellant. Carl H. also testified that appellant forced him to perform oral sodomy five or six times. Neither Theodore J. nor Carl H. were able to provide dates for the alleged incidents. Finally, McKinley J. testified that he observed defendant perform anal intercourse on Robert M. in 1962. Because appellant did not begin his job at Hillcrest until early 1966, the date of the alleged occurrence witnessed by McKinley J. is also unclear. An outer time limit, however, can be established

because McKinley J. testified that he left Hillcrest in 1967. In sum, all of the alleged acts occurred sometime between the beginning of 1966 and 1971, but no specific dates can be pinpointed.

"One of our most fundamental and prized principles in the administration of criminal law is that a distinct crime, except under certain special circumstances, cannot be given in evidence against a defendant who is being tried for another crime. This is because the fact that a person has committed one offense is not proof that he has committed another and because the effect of such testimony upon a jury is nevertheless bound to create prejudice and an emotional reaction on their part against the defendant." *Commonwealth v. Burdell,* 380 Pa. 43, 47, 110 A.2d 193, 195 (1955). See also *Commonwealth v. Peterson,* 453 Pa. 187, 307 A.2d 264 (1973); *Commonwealth v. Boulden,* 179 Pa.Super. 328, 116 A.2d 867 (1955); *See, generally, McCormick on Evidence,* § 190 at 447–454 (2nd Ed. 1972). Special circumstances justifying exceptions to the general rule exist when the evidence of other crimes "tends to prove (1) motive; (2) intent; (3) absence of mistake or accident; (4) a common scheme, plan or design embracing commission of two or more crimes so related to each other that proof of one tends to prove the others; or (5) to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Commonwealth v. Peterson,* supra, 453 Pa. at 197–198, 307 A.2d 269. See also *Commonwealth v. Wable,* 382 Pa. 80, 114 A.2d 334 (1955); *Commonwealth v. Boulden,* supra.

The lower court allowed the introduction of the testimony on the theory that it helped to show a common scheme, plan or design to commit oral and anal sodomy

against residents of the Hillcrest School. In his written opinion rejecting appellant's post-trial motions, the trial judge stated that, "these other acts were similar enough to warrant their submission to the jury to show peculiar appetites or needs of the defendant and his propensity to fill these needs and the way he went about it." The Commonwealth's brief amplified upon these assertions. Appellant's "plan" included the use of his official authority to obtain sexual gratification from young, minimally educated, and mentally retarded males, by force if necessary. The similarity of the nature of the victims and the crimes served as the appellant's "signature." The Commonwealth also argues that the proffered testimony sheds light on appellant's "state of mind" during December, 1968. We believe that the trial court and the Commonwealth endorse an erroneously expansive interpretation of the "common design" and "state of mind" exceptions to the general rule precluding the use of "other crimes" in a criminal trial.

*Commonwealth v. Boulden,* 179 Pa.Super. 328, 116 A. 2d 867 (1955), a case factually similar to the one at bar, provides an appropriate analysis for considering the introduction of other sex crimes allegedly committed by a defendant. In *Boulden,* defendant, an automobile mechanic, was convicted of corrupting the morals of two seven year old girls. Both girls testified that they entered defendant's garage in September, 1954, to get a drink of water. Defendant then took each girl separately into an alignment pit, had her sit on a cart, pulled her shorts to the side, and fondled her. After having each girl get up from the cart, he then sat on it himself and had each girl sit on his lap facing him. While in this position, defendant exposed himself and continued to molest the girl. At trial, the Commonwealth introduced the testimony of a twelve-year-old girl that during the summer of 1953, she went into defendant's garage to get a drink of water, that she got on the cart at defendant's

suggestion, that defendant asked her to sit on his lap facing him, and that she refused and left the garage. The Superior Court assumed that the alleged occurrence of the summer of 1953, constituted a crime and determined that its impermissible introduction at trial compelled a reversal.

Judge Woodside, in a long and cogent opinion, concluded that the disputed testimony could not be admitted as showing a plan, scheme or design nor could "[a] single act with a different child over a year before . . . be a 'sequence of acts.'" 179 Pa.Super. at 339, 116 A.2d at 872. The alleged acts of sodomy in the case at bar could not be dated with precision, but some acts may have occurred almost three years before the December, 1968 incident charged in the indictment, and some acts may have occurred as much as three years after December, 1968. These random and remote acts are not relevant in establishing that appellant acted according to an explicit and premeditated plan in December, 1968.[2]

The trial court and the Commonwealth rely heavily on *Commonwealth v. Kline,* 361 Pa. 434, 65 A.2d 348 (1949), as support for an expanded and loose definition of "plan or design." In *Kline,* the Pennsylvania Supreme Court stated that, "The word 'design' implies a plan formed in the mind. That an individual who com-

2. According to *McCormick,* supra, at 448–49, the common plan or design exception is only applicable when the prosecution hopes to use the evidence to shed light on the disputed issues of defendant's motive, identity, or intention. In the case at bar, appellant did not seek to establish that he lacked a motive for sodomy, or that he committed sodomy "accidentally" or that Robert M. was mistaken as to the identification of his attacker. Instead, appellant argued that the whole charge was a fabrication concocted by spiteful residents of Hillcrest School. Because there was no issue of mistaken identity at trial, the Commonwealth cannot justify the introduction of the other acts as "so nearly identical in method as to earmark them as the handiwork of the accused." See *McCormick,* supra, at 449. Nor can it be said that repeated acts of oral and anal sodomy are so distinctive as to be tantamount to appellant's unique "signature."

mits or attempts to commit abnormal sex offences is likely to have such a mental 'plan' finds recognition in the fact that when a defendant is charged with the commission of a sexual offence the law is more liberal in admitting as proof of his guilt evidence of similar sexual offences committed by him than it is in admitting evidence of similar offences when a defendant is charged with the commission of non-sexual crimes, . . . [I]f A is being tried for the rape or attempted rape of Y the fact that *recently* he raped or attempted to rape X is admissible in evidence because it tends to prove that he possessed such an abnormal mental or moral nature as would likely lead him to commit the offence charged." 361 Pa. at 443–444, 65 A.2d 351 (1949). (emphasis supplied). In *Kline,* however, the defendant was charged with a rape occurring on October 20, 1946, and another witness testified that defendant exposed himself to her sometime late in October. "There was thus a close relationship in time, with the probability that the events occurred within a week of each other and the possibility that they occurred the same day." *Commonwealth v. Boulden,* supra, 179 Pa.Super. at 347, 116 A.2d at 876. We agree with Judge Woodside's opinion in *Boulden* that the rule of the *Kline* case should not be extended beyond its facts to permit evidence of events occurring more than one year prior to the offense charged.[3] The infer-

---

3.  We prefer to rest our reasoning and conclusion on the narrow ground that the acts sought to be introduced were too remote in time to fit within the "common design" exception, as discussed in *Kline.* Judge Woodside, however, sharply questioned whether the "common design" exception should receive a looser and more "liberal" interpretation when sex crimes are involved. The Majority's approach in *Kline* rested on the questionable assumption that a rapist is more likely to repeat his crime in the near future than is a robber or a murderer. Judge Woodside adduced statistical studies to repudiate this contention, and argued that, "in some respects there should be no distinction between sex offenders and other offenders, while in other respects there should be a distinction between different types of sex offenders." *Commonwealth v. Boulden,* 179 Pa.Super. at 342, 116 A.2d 873. Unless a discriminating analysis is utilized, a trial court may fall into the

ence that a common mental plan continues to exist as long as three years before or after the offense charged is too weak and speculative to offset the inevitable prejudice caused to appellant by the introduction of previous acts of sodomy. See also *Commonwealth v. Ransom,* 169 Pa.Super. 306, 82 A.2d 547 (1951),[4] in which our Court required that there be a reasonable limitation as to the time and place of other crimes sought to be introduced into evidence.[5]

The Commonwealth also seeks to justify the admission of the other acts of sodomy on the ground that they illuminated defendant's "state of mind" during December, 1968. Again, *Commonwealth v. Boulden,* supra, gives the proper rejoinder. "If the event took place on the same day, and possibly within a very few days, it might have been evidence of the ' "state of mind" ' of the de-

trap of admitting evidence of other crimes when, in fact, the only purpose of the evidence is to show depravity or propensity. This, in fact, is what happened in the case before us; the lower court sanctioned the Commonwealth's evidence because it demonstrated appellant's "peculiar appetites or needs" and "his propensity to fill these needs." While more statistical evidence may be needed to permit a clear attack on the sex crimes approach employed in *Kline,* Judge Woodside's admonition to be sensitive to the circumstances and possible prejudice existing in a particular case is certainly appropriate here.

4. In *Ransom,* defendant was convicted of rape and challenged, on appeal, the introduction of evidence of a rape which occurred two or three days before the rape of which he was accused. The evidence of the earlier rape tended to prove defendant's identity, an issue in the case. Because these offenses were so closely related in time, and because identity was in issue, that case is not authority for the instant case where the alleged offenses occurred over a six year time span and identity was not in issue. Cf. *Commonwealth v. Boulden.*

5. A similar rule operates to exclude the use of properly recorded convictions from the remote past to impeach a witness. Cf. *Commonwealth v. Bighum,* 452 Pa. 554, 307 A.2d 255 (1973); *Federal Rules of Evidence* § 609(b), 28 U.S.C. Rule 609(b) (Appendix 1975); *Wigmore on Evidence* § 43 at 87 (2nd Ed. 1972). "Reasonable" time limitations should be even more strictly construed when the prosecution seeks to introduce evidence of other offenses, not documented by recorded convictions or even resulting in arrest or trial, as part of its case-in-chief.

fendant at the time of the alleged attack and as such would be admissible under the authority of numerous cases." 179 Pa.Super. at 346–47, 116 A.2d at 875. Judge Woodside, however, refused to stretch the "state of mind" exception to apply to cases not closely related in time to the offense charged. "The state of mind that will permit the admission of an unrelated crime is the state of mind at the time of the commission of the offense as shown by the acts or words of the defendant so close in time to the alleged offense as to have bearing upon his state of mind at that time. Defendant's conduct over the years cannot be shown to prove he has a depraved or wicked state of mind generally." at 341, 116 A.2d at 873. If this time limitation is not insisted upon strictly, then the very purpose of the "other crimes" rule will be subverted: defendants will be convicted because they are bad people.

*McCormick*, supra at 453, is critical of many of the cases which discuss the admission into evidence of other crimes: "Most of the opinions . . . proceed on the assumption that the decision turns solely upon the ascertainment and application of a rule. If the situation fits one of the classes wherein the evidence has been recognized as having independent relevancy, then the evidence is received, otherwise not." By narrowly focusing on the application of mechanical rules, judges may "lose sight of the underlying policy of protecting the accused against unfair prejudice." *McCormick*, supra at 453. McCormick rejects this "pigeonholing" approach, and recommends that courts balance, "on the one side, the actual need for the other-crimes evidence in the light of the issues and the other evidence available to the prosecution, the convincingness of the evidence that the other crimes were committed and that the accused was the actor, and the strength or weakness of the other-crimes evidence in supporting the issue, and on the other, the de-

gree to which the jury will probably be roused by the evidence to overmastering hostility."[6] at 453.

We believe that this balancing process operates to exclude the challenged evidence in this case and supports the wisdom of our interpretation of the traditional rule and exceptions. First, the evidence that the other crimes were committed and that the accused was the actor is very weak. Appellant was not convicted or arrested for these other alleged acts of sodomy. He was not even accused of these acts by the putative victims until many years had transpired. The only evidence of the actual occurrence of these acts is the testimony of people who were teen-agers and limited intellectually at the time the acts were allegedly committed. Defendant would have an extremely difficult time countering testimony as to vaguely described acts which happened on unspecified dates. The other crimes evidence, as discussed previously, has minimal probative value on the issue of whether or not appellant committed sodomy on Robert M. during December, 1968. The testimony concerns acts too remote to bear on appellant's state of mind or conduct in December, 1968. Its only relevance is "to ground the (impermissible) inference that accused is a bad man and hence probably committed this crime." *McCormick*, supra, at 453. While the Commonwealth may suffer certain practical problems from the exclusion of this evidence, its case is not totally destroyed from a legal standpoint. At

6. Judge Woodside again deserves commendation for his foresightedness and common sense in *Commonwealth v. Boulden*, supra. Instead of merely relying on the traditional rule and exceptions, Judge Woodside examined the policy bases of the "other crimes" rule. He concluded that without the protection of the "other crimes" rule, (1) a defendant would have to meet charges of which he had no notice and which might be totally fabricated; (2) the defendant would have to respond to collateral issues and the attention of the jury would be diverted from the crime being charged; and (3) the jury might conclude that proof of prior offenses justified a condemnation of the defendant irrespective of his guilt of the offense charged. All these dangers are manifestly presented by the facts of the instant case.

retrial, Robert M.'s testimony, if believed by the jury, would be sufficient evidence to support a conviction.[7] Most importantly, this testimony is exactly the type of "other crimes" that appeals to the jury's emotions and leads to a conviction based on the depravity of a person's character. A jury might very well combine sympathy for the plight of the alleged victims with the cumulative impact of the alleged incidents to produce an overwhelming hostility to defendant as a person that could not be refuted by either testimony as to the offense charged in the indictment or arguments of reason. Accordingly, we reverse the judgment of sentence and grant a new trial.

PRICE, J., did not participate in the consideration or decision of this case.

WATKINS, President Judge, and VAN der VOORT, J., dissent.

_____

7. It should be noted that some of the other alleged acts of sodomy testified to by the Commonwealth's witnesses were committed in the presence of eyewitnesses. The Statute of Limitations, Act of March 31, 1860, P.L. 427, § 77; Act of April 6, 1939, P.L. 17, § 1; 19 P.S. § 211, may bar prosecution on any of the alleged offenses committed prior to the one charged in the indictment. Nevertheless, this fact may indicate that ample testimony may still be available in future prosecutions of persons in positions similar to that of appellant.